# THE STATE OF INDIANA, EX REL. WHITE, *v.* SCOTT.

[No. 21,298.    Filed December 9, 1908.]

1.  PLEADING.—*Complaint.—Duplicity.—Theory.—Appeal.*—Where a paragraph of complaint proceeds upon two theories, the theory adopted by the trial court, and upon which the trial proceeded, will be adhered to on appeal. p. 353.

2.  SAME.—*Theory.—How Determined.*—The theory of a complaint must be determined from its general scope and character. p. 354.

3.  SAME.—*Theory Adopted by Trial Court.—Appeal.*—Where the trial judge in his special findings erroneously states that the relator in a *quo warranto* proceeding claimed his election on a certain day, but the information and the evidence introduced show that he claimed his election on a subsequent day, the Supreme Court will not follow the theory adopted by the trial court. p. 354.

4.  SAME.—*Complaint.—Quo Warranto.—Election.—School Superintendent.*—An information in a *quo warranto* proceeding, alleging that a certain person, who was ineligible, at an election on June 3, received a majority of the votes cast for county superintendent, that relator received a minority of such votes and was elected, that the county auditor called the trustees to meet on July 3, when they elected the relator, who duly filed his bond and demanded possession of the office, shows that relator relied upon the election of July 3 as the basis of his right to the office. p. 354.

5.  TRIAL.— *Special Findings.— Complaint.— Surplusage.—* Special findings upon surplusage in a complaint are valueless. p. 355.

6.  PLEADING.—*Complaint.—Quo Warranto.—School Superintendent. —Election.—Failure.—Subsequent Election.*—An information in *quo warranto* alleging that the township trustees met on June 3, 1907, to elect a county superintendent, that an ineligible person received a majority of their votes, that at a called session on July 3, the relator received a majority of the votes, is sufficient, the allegation as to the election on June 3 being matter of inducement showing the reason for an election on July 3, redundant matters being disregarded when questioned for the first time after trial. p. 356.

7.  SCHOOLS.—*County Superintendent.—Failure to Elect at Specified Time.—Subsequent Election.*—Under §6376 Burns 1908, Acts 1899, p. 240, §1, providing that the township trustees shall meet on the first Monday in June, 1899, and every four years thereafter, and elect a county superintendent, such trustees have a right, upon a failure to elect, to reassemble afterwards and elect. p. 356.

8.  OFFICERS.—*County Superintendent.—Holding Over.—Vacancy.—* Where the township trustees failed to elect a county superintend-

State, ex rel., v. Scott—171 Ind. 349.

ent at the proper time, but did so subsequently, the incumbent cannot retain the office on the ground that there was no "vacancy" in the office at the time of such election. p. 357.

9. OFFICERS. — County Superintendent. — Trustees. — Election. — Auditor's Duty.—Notice.—On a failure of the township trustees at the proper time to elect a county superintendent, it is the duty of such trustees, upon notice from the auditor, or upon their own initiative, to reassemble and elect a superintendent. p. 358.

10. DOMICILE.—"Resident."—Evidence.—A citizen does not change his "residence" until he forms an unequivocal intention to move to another place, and either moves or begins to move to the new place. p. 358.

11. SAME.—Continuance of.—Presumption.—Where a residence is once established, the presumption is that it continues there until it is shown to be changed. pp. 359, 361.

12. SAME.—Evidence.—Where the evidence shows that a person left Indiana to locate in another state, but failed to find a satisfactory place, returning later to Indiana, a change of residence is not shown. p. 359.

13. APPEAL.—Weighing Evidence.—The Supreme Court cannot weigh the evidence, and therefore must give effect to the strongest evidence in favor of the appellee. p. 361.

14. TRIAL.—Burden of Proof.—Change of Domicile.—The burden of proving a change of domicile is upon the party asserting same. p. 362.

15. EVIDENCE.—Commissioners' Record.—County Superintendent's Election.—A county commissioners' record is admissible in evidence to show the election of a county superintendent, where the record thereof was made in such book, though the statute (§6376 Burns 1908, Acts 1899, p. 240, §1) requires the record thereof to be kept in a separate book for that purpose. p. 362.

16. SAME.—Records.—Oral Proof of Facts Which Should be Contained Therein.—Where facts required to be entered of record are not so entered, oral evidence of such facts is admissible, unless the statute provides that the record shall constitute the sole evidence thereof. p. 363.

From Clark Circuit Court; *Harry C. Montgomery*, Judge.

*Quo warranto* by the State of Indiana, on the relation of Roy L. White, against Levi H. Scott. From a judgment for defendant, plaintiff appeals. *Reversed.*

*George H. Hester* and *Alexander Dowling*, for appellant.
*Charles W. Smith, George H. Voight* and *Walter V. Bulleit*, for appellee.

HADLEY, J.—This is a *quo warranto* proceeding, instituted on the relation of Roy L. White, to determine the title to the office of county superintendent of schools.

The relator alleges in his information that on the first Monday in June, to wit, on June 3, 1907, he was duly elected to the office of superintendent of the schools of Floyd county; that the defendant was his predecessor in said office, and that his term of office expired, by limitation, on said June 3; that the relator was qualified and eligible to hold the office, and had made a demand upon defendant for the office books and papers belonging thereto, and had been refused; that there are five townships and five trustees in Floyd county; that all of the trustees were present at the meeting, and three of them voted for Melbert R. Williams, and two of them for the relator; that Williams was not then, and never was, eligible to hold the office of superintendent, because he did not then, and never did, hold a three years', a life, or a professional license, as required by the statute; that Williams did not attempt to assume, or qualify for, said office; that on July 3, 1907, upon notice given by the auditor, the five trustees again met at the auditor's office, and, by a unanimous vote, elected the relator county superintendent; that relator qualified as such superintendent by giving bond and taking the oath of office, and has since then performed the duties of the office, except as prevented from so doing by defendant, as stated.

The answer was a general denial. There was a special finding of facts and conclusions of law thereon in favor of the defendant, and, the relator's motion for a new trial having been overruled, he appeals.

It is disclosed by the special findings that the defendant, on the first Monday of June, 1903, was elected and he qualified as county superintendent for the term of four years, and until his successor should be elected and qualified. Floyd county is divided into five townships, and on the first Monday in June, 1907, the five trustees of the county met

at the auditor's office to elect a county superintendent. Three of said trustees voted for Melbert R. Williams, and the remaining two voted for the relator, and then adjourned *sine die*. Williams was not then, and never was, eligible to hold the office of county superintendent. The three trustees who voted for Williams did so in good faith, believing him to be eligible, but he did not qualify, or make any claim to the office. On June 18, the auditor notified the five trustees to meet at his office on July 3, 1907, to elect a superintendent. In compliance with the notice the trustees met and held an election. The relator received notice that he had been elected to said office, and on July 10, 1907, he filed with the auditor of said county his official bond as such superintendent, approved by the auditor, and took the oath of office, since which time he has claimed the right to perform the duties of said office, and before the commencement of this action demanded from the defendant the possession of the books, papers and other property belonging to said office, which was refused. After June 3, 1907, the relator, being without a family, left the State of Indiana and went to the Southwest, with the intention of permanently leaving the State of Indiana, and did thereby lose his citizenship in Floyd county, and become a nonresident of the State until his return on July 8, 1907. It is further found "that there was no vacancy in said office on July 3, 1907, nor at any time before nor since; that on July 3, 1907, said five trustees assembled at 10 o'clock a. m. at the auditor's office of Floyd county, for the purpose of electing a county superintendent of schools to fill said alleged vacancy; that the evidence does not show the result of said pretended election."

The court stated its conclusions of law upon the foregoing facts, as follows: "(1) There was no valid election of county superintendent of schools of Floyd county, Indiana, on the first Monday of June, 1907. (2) There was no va-

cancy in said office at the time the auditor of said county notified said trustees to assemble on July 3, 1907, and said notice was not authorized by law. (3) There was no vacancy in said office on July 3, 1907, and said trustees had no authority to meet on said day to elect a county superintendent of schools for said Floyd county, and all the acts of said trustees at said meeting were without authority of law. (4) The relator was not, on July 3, 1907, eligible to hold the office of county superintendent of schools for said Floyd county, by reason of the fact that he was then a nonresident of the State of Indiana. (5) The defendant, Levi H. Scott, was on the first Monday of June, 1907, and has ever since been, the duly elected, qualified and acting county superintendent of schools for Floyd county, Indiana. (6) The relator, Roy L. White, is not entitled to said office, and should recover nothing by reason of the action. (7) The defendant should recover of the relator his costs herein laid out and expended.''

There was a separate exception to each of the conclusions of law.

That the action has been well brought to test the title to the office of county superintendent is not called in question.

A demurrer to the information, for insufficiency of facts, was overruled, but no complaint of the ruling is made in this court. It is, however, earnestly insisted that the complaint is double, and proceeds upon the theory that the relator was elected to the office of superintendent on June 3, 1907, and not on July 3, 1907. We concede the rule, contended for by appellee, that, if the plaintiff states his cause of action upon two distinct theories in the same paragraph of complaint, he can proceed only upon one, and must establish his right of recovery under the theory adopted, or fail in his action. *Holderman* v. *Miller* (1885), 102 Ind. 356, and cases cited; 21 Ency. Pl. and Pr., 650.

But the theory upon which the case rests must be deter-

mined by the court from the general tenor and character of the pleading; that is, upon the theory that is most 2. apparent and clearly outlined by the leading averments. *Western Union Tel. Co.* v. *Reed* (1884), 96 Ind. 195, 198; *Jones* v. *Cullen* (1895), 142 Ind. 335, 341; *Vandalia R. Co.* v. *State, ex rel.* (1906), 166 Ind. 219, 117 Am. St. 370.

The judge states, among his findings, "that the relator has proceeded upon the theory that he was elected to said office on the first Monday of June, 1907." But, as 3. it does not appear from the general tenor of the information, or from the character of the evidence introduced in support of the complaint, that the parties acquiesced in that theory, we are not bound by it on appeal. 21 Ency. Pl. and Pr., 664, and authorities collated.

And we are not satisfied that the honorable trial court correctly apprehended the theory upon which the information was drawn and presented.

It is averred that at the election on the first Monday of June, Melbert R. Williams, an ineligible person, received a majority of the votes cast, and while it is also alleged 4. that the relator, having received a minority of the votes, was elected superintendent by reason of Williams's ineligibility, yet it clearly appears, from what is subsequently averred, that neither Williams nor the relator asserted any rights by virtue of said election, but in all respects treated it as nugatory.

It is shown that the trustees again assembled on July 3, for the purpose of electing a county superintendent. The relator, with others, impliedly acknowledging thereby that he had not been previously elected to said office, submitted his name, was elected, so declared by the trustees, and in less than a week had filed his bond with the auditor, taken the oath of office, and entered upon the discharge of the duties of the office, except as prevented by the defendant— all of which, upon the trial, the relator offered to prove.

Under the general scope of these averments and the conduct of the relator at the trial, it is clear that he counted on the election of July 3 as giving him a right to the office, and not upon the abortive election of June 3. Besides, the facts found, and the conclusions of law as stated thereon, are inconsistent with the theory adopted by the trial court. If the relator relied upon the action of the trustees on June 3 for his election to the office, then all his subsequent averments, concerning the action of the trustees on July 3, were mere surplusage, and a finding of the court upon such averments would be as futile as the averments themselves.

The first conclusion of law is that "there was no valid election of county superintendent on the first Monday of June, 1907." If that were a fact, and the relator based his claim to the office on the validity of his election on that day, then he had no cause of action, and the case was properly at an end. But the court goes on and finds that, several days after June 3, the relator left Floyd county for the Southwest, with the intention of permanently leaving the State of Indiana and becoming a nonresident—an unlikely performance, if the relator then understood, or was claiming, that he had been elected to an office he had so recently sought. The finding further states that afterward, upon notice so to do by the auditor, the trustees again met at the auditor's office, on July 3, for the purpose of electing a county superintendent; that the relator was notified that he was on said date elected to said office, and he did, on July 10, appear and file his approved bond, and take the oath of office as such superintendent. Concerning these facts, the court, by the fourth conclusion, in effect, states that the relator is not entitled to the office, not because of his failure to be elected thereto, but because he was not, on July 3, a resident of the State of Indiana.

The special findings and conclusions of law come to this: There was no election of anybody on June 3, 1907, and the

relator, by subsequently going to the Southwest, had become ineligible to fill the office to which he was elected on July 3, by being then a nonresident of the State. In other words, the leading averments of the complaint, the evidence offered, the finding and the judgment, clearly relate to the state of facts as they existed at the time of the election of July 3; and such, we think, was the theory of the trial below.

There was no demurrer for misjoinder, nor motion to separate. Allegations concerning the events of the first Monday in June, the date fixed by statute for the 6. election of county superintendents, were proper, if not necessary, as matter of inducement, to exhibit a justification for the election on July 3. If such allegations go beyond requirements, and state redundant and surplus matter, the court will not attach importance to such surplusage when assailed for the first time after trial.

Section 6376 Burns 1908, Acts 1899, p. 240, §1, provides, that the township trustees of each county shall meet at the auditor's office on the first Monday of June, 1899, at 7. 10 o'clock a. m., and every four years thereafter, and elect, by ballot, a county superintendent, and where a vacancy occurs in the office the trustees, on three days' notice from the auditor, shall assemble at the auditor's office on the day designated in the notice, and fill such vacancy by ballot for the unexpired term. Under this statute, had the trustees authority of law to meet and elect a county superintendent on July 3, the term of office of the encumbent having expired on the first Monday of the preceding June?

Concerning this question, we said in the case of *Hendershot* v. *State, ex rel.* (1904), 162 Ind. 69: "For the most excellent reason, it seems to be held by the courts everywhere that when a duty is imposed by statute upon public officers which affects the rights or duties of others, and the time of its performance designated, the officers will not be relieved of the duty by their failure to perform on the date

specified, unless the language of the statute is such that the designated time must be accepted as a limitation of the officers' power. In the absence of words of limitation, the prescribed time of performance will be regarded as directory only, and the duty to perform a continuing one." The same rule has been repeatedly affirmed by this court, and should be considered the settled rule of construction in such cases. *Wampler* v. *State, ex rel.* (1897), 148 Ind. 557, 38 L. R. A. 829; *Landes* v. *State, ex rel.* (1903), 160 Ind. 479; *Morrison* v. *Indianapolis, etc., R. Co.* (1906), 166 Ind. 511; *Featherngill* v. *State, ex rel.* (1904), 33 Ind. App. 683. In the statute there are no negative words, and no words limiting the power to elect a superintendent to the first Monday in June, and so the statute very clearly comes within the operation of the foregoing rule.

Appellee also insists that there was no vacancy in the office of superintendent on July 3, for the reason that he was elected, under the statute, for four years and until his successor should be elected and qualified, and, the trustees having failed to elect a successor on the first Monday of June, he was entitled to hold over till the next statutory period for an election, to wit, the first Monday of June, 1911.

This is wholly untenable. It makes no difference whether we do, or do not, call it a vacancy. Appellee was then holding the office, not by virtue of an election, but only for a temporary period provided by law as a means of preventing a suspension of public business while a successor was being chosen and qualified. His right to hold the office ceased the moment a qualified successor presented himself to assume it. The attempted election of June 3 having proved fruitless, the duty of the trustees to elect remained unperformed and continuing, and no failure or delay lessened the obligation to perform, and to do so without unnecessary delay.

As soon as the result of the June 3 election was known

to the county auditor, it became his duty to notify the trustees to assemble for the purpose of accomplishing an 9. election, as was done in this case. If the auditor had neglected to give such notice, this would have furnished the trustees no justification in the postponement of an election, if, from another reliable source, they had learned that their act of June 3 had failed. What the trustees may be compelled to do after notice, they may voluntarily do without notice.

The insufficiency of the evidence to support the finding that the relator was, on July 3, 1907, a nonresident of the State of Indiana is assigned as the eleventh reason for a new trial. It is in these words: "That several days after June 3, 1907, the relator, who was then an unmarried man, with no family, and was boarding in said Floyd county, left said county and State and went to the Southwest, with the intention of permanently leaving the State of Indiana, and said White did then and there leave the State of Indiana and lose his citizenship and residence therein, and from the time he left in June, 1907, until he returned July 8, 1907, he was not a resident of the State of Indiana." Upon this finding of fact the court stated, as its conclusion of law, that the relator was not, on July 3, 1907, eligible to the office in question, for the reason that he was not then a resident of the State of Indiana.

The question of residence is largely one of intention. A mere intention, however, to change from one place to another, is not sufficient. To effectuate a change of 10. residence the intent to remove must be unequivocally formed, and a fixed settlement at another place resolved upon, and either accomplished or its establishment entered upon, with no present intention of returning to the former place, or of departing from the latter. Intention and action must coexist. *Pedigo* v. *Grimes* (1888), 113 Ind. 148, 153, and authorities cited; *Culbertson* v. *Board, etc.* (1876), 52 Ind. 361; *Green* v. *Simon* (1897), 17 Ind. App.

360.  See, also, *Fry's Election Case* (1872), 71 Pa. St. 302, 10 Am. Rep. 698.  We said in a recent case that "a purpose to change such residence, unaccompanied by actual removal or change of abode, does not constitute a change of domicile." *Eel River R. Co.* v. *State, ex rel.* (1900), 155 Ind. 433, 447. To the same effect see *Penfield* v. *Chesapeake, etc., R. Co.* (1890), 134 U. S. 358, 10 Sup. Ct. 566, 33 L. Ed. 940, and 24 Am. and Eng. Ency. Law (2d ed.), 697, and cases collated.  An unsettled, indefinite or floating intention, as it is sometimes called, to establish a permanent home or residence in some undetermined locality does not affect the actual residence.  So it may be here said that a journey into another state or territory for inspection, accompanied with an intent permanently to remove to such other state, if a satisfactory place is found, does not amount to a change of residence until an approved location has been not only discovered and chosen, but some affirmative step taken in the transfer of personal effects from the former to the latter place, as the only and *bona fide* home.

Where a residence is once shown, it is presumed to continue at the same place until it is clearly shown to have been changed.

The evidence touching the relator's residence, in substance, follows.  The relator testified that on June 3, he was unmarried.  His residence was with his father in Georgetown township, Floyd county, Indiana.  On June 18 he left Floyd county, and went first to Santa Fe, then to Albuquerque, then to Secora, New Mexico.  He arrived at the latter place about June 23.  From Secora he went to Kansas City, then to Oberlin, Kansas, and then to Danbury, Nebraska, where he arrived about June 30.  He stayed there about a week, and left for Floyd county on July 7, arriving on July 9.  He learned, from a dispatch received from home about July 6, of the action taken by the trustees of Floyd county on July 3.  His trip west was a

State, ex rel., v. Scott—171 Ind. 349.

pleasure trip, and when he left Floyd county for the Southwest it was not his intention to leave permanently.

Appellee testified: "I had two conversations with Mr. White [the relator] in reference to his going to the West or-Southwest. The first was after, but in the same week of, the June election, at the court-house in New Albany. He then asked me to give him a letter of recommendation, and said he was going to the Southwest, and thought a letter of recommendation from me might help to secure him a position. Upon my promise to give him the letter, he said any time within the next few days would do. My other conversation with him was on the court-house steps in the latter part of the week in which he left. In this conversation I asked him if he would be with us next year in the schools. He said: 'No; I am going to the Southwest to locate, and to make it my home.'"

James Scott, a brother of appellee, testified that ten or twelve days after the June election he had a conversation with the relator in New Albany. The latter said he was going to the Southwest. "I said: 'Are you just going on a pleasure trip?' He said: 'No; I am going to locate permanently.' I think he said he was going to Arizona, but I am not sure." Ralph Scott, nephew of the appellee, also testified that the relator said to him, in a conversation held between them in New Albany, that he intended to locate in the Southwest; that he thought the chances for advancement were better there than here.

In rebuttal the relator denied the conversations testified to by James and Ralph Scott, and affirmed that what he did say to both was that he was going out there, but did not say he was going to locate there permanently. He testified: "My only intention was to go on a prospecting trip, to ascertain the conditions, particularly relative to school work in the Southwest."

In a concrete form, the testimony may be thus expressed: The relator testified that he left Floyd county for the South-

west on a prospecting trip, to examine into the conditions, particularly as they related to schools in that section, but with no fixed intention to locate there permanently. As against this, the sum of the defendant's evidence was that the relator, in three separate conversations concerning his contemplated journey to the Southwest, stated: (1) "I am going to the Southwest to make it my home;" (2) "I am not going to the Southwest on a pleasure trip, but to make it my home;" (3) "I am going to locate in the Southwest."

We cannot weigh the evidence, and hence must assume that the relator made all the statements attributed to him by appellee and his relatives. But what if he did? They fall far short of establishing a residence in the Southwest, within the rules of the law. It is an old saying, in such cases, that every man has a residence somewhere, and that he does not lose the one he has until he has gained one in another place. On this same point this court, in *Culbertson* v. *Board, etc., supra,* at page 370, quotes approvingly from *Bulkley* v. *Inhabitants, etc.* (1855), 3 Gray (Mass.) 493, the following: "The general rule, and, for practical purposes, a fixed rule, is that a man must have a habitation somewhere; he can have but one; and therefore in order to lose one, he must acquire another. This is the test, the practical test. * * * One of the fixed rules on the subject is this: That a purpose to change, unaccompanied by actual removal or change of residence, does not constitute a change of domicile. The fact and intent must concur. He must remove, without the intention of going back. The question here is, whether he can abandon one, without acquiring another, and we think it has always been held that he cannot. If he goes into another state, and returns for his family, his personal presence there, concurring with the intent, may fix his domicile there. But if he has not previously removed to the other state, he has not acquired a domicile there, or lost one here."

We are directed to no evidence that establishes, or tends

to establish, all the essential elements of a change of residence from Floyd county, Indiana. Where was the new home? In Missouri, Kansas, Nebraska or New Mexico? The relator left the State of Indiana on June 18, traveled many hundred miles, visited and inspected school conditions in six cities and towns, situate in four different states and territories of the Southwest, and was back in Floyd county in twenty-one days. Which of the six cities, under the evidence before us, did the relator select as his permanent home? What did he do towards transferring his personal effects, or towards settling himself in the new place? These are material matters. It was encumbent upon appellee to overcome the presumption of the relator's continued residence in Indiana, yet the record does not present us with a shadow of evidence upon these points. Therefore, the fourteenth finding of fact is not sustained by sufficient evidence, and the fourth conclusion of law is erroneous.

The court's thirteenth finding of fact is that "the evidence does not show the result of said pretended election of July 3." The probable reason for the paucity of evidence is found in relator's bill of exception, and in his sixteenth reason for a new trial.

After showing that the minutes of the township trustees, in the election of a county superintendent in Floyd county, were recorded in the county commissioners' record, and no other, and that the minutes of the trustees, in their election of July 3, were spread of record in Vol. 9 of said commissioners' record, the relator then offered in evidence certain pages of said record, which show, in elaborate detail, the various proceedings of the trustees on July 3, that resulted in the election of the relator, and the formal declaration of said election, by the trustees, "for and during the unexpired part of the present term." To the introduction of which the appellee, among other reasons, objected, on the ground that said record was illegal because entered in the

commissioners' record, and not in a volume or record kept for that purpose. The court sustained the objection. This was error. We are aware that §6376 Burns 1908, Acts 1899, p. 240, §1, provides that the county auditor shall be clerk at an election by the trustees, and that he "shall keep a record of such election in a book kept for that purpose." But the statute is clearly directory. It has been a rule in this State for more than fifty years that a record is but the evidence of the fact recorded. The fact ordinarily exists independently of the record, and when there is no provision that it shall be provable only by the record, the same, upon failure of the record, may be established by parol. So in this case, if there had been no record at all, the want of it would not have invalidated the election, and the same might have been proved by parol evidence. *Ross* v. *City of Madison* (1848), 1 Ind. *281, 48 Am. Rep. 361; *Halstead* v. *Board, etc.* (1877), 56 Ind. 363, 375; *State, ex rel.,* v. *Hauser* (1878), 63 Ind. 155, 183; *White* v. *State* (1879), 69 Ind. 273, 277. In the case of *Ross* v. *City of Madison, supra,* it is said at page *284: "But if, owing to the imperfect and careless manner in which the records were kept, there was no written evidence in existence to prove clearly that the work was done by the authority of the council, the plaintiff had a right to prove that fact by parol testimony." We also quote from page 182 of the case of *State, ex rel.,* v. *Hauser, supra,* the following: "The minutes of the common council are only evidence of their proceedings and actions; but if no minutes or record of the acts of the common council have been kept, these facts may be proved by parol evidence, like any other facts." It is said in the case of *White* v. *State, supra,* at page 277: "In the absence of any statutory provision, to the effect that the election of the trustees of the church can only be proved by written evidence, the fact of such election may be proved by parol evidence."

There are other subsidiary questions presented that are left undecided, as they will probably not arise again.

The judgment is reversed, and the cause remanded, with instructions to grant appellant a new trial, and for further proceedings not inconsistent with this opinion.