## OSBORN v. THE ADAMS BRICK COMPANY.

[No. 7,714    Filed October 29, 1912.    Rehearing denied January 22, 1913.]

1. TRIAL.—Verdict.—Answers to Interrogatories.—Motion for Judgment.—A motion for judgment on the answers to interrogatories can only be sustained where the facts thereby found are in irreconcilable conflict with the general verdict. p. 182.

2. TRIAL.—Verdict.—Answers to Interrogatories.—Presumptions.— Every reasonable presumption is indulged in favor of the general verdict, and nothing is presumed in favor of the answers to the interrogatories. p. 182.

3. TRIAL.—Verdict.—Answers to Interrogatories.—Judgment.—To authorize a judgment on the facts found by answers to interrogatories, such facts must be sufficient to overcome any evidence legitimately admissible under the issues. p. 182.

4. PLEADING.—Complaint.—Determination of Theory.—The theory of a complaint must be determined from its general scope and tenor, and not from fragmentary statements, detached parts or conclusions, and that theory which is most apparent and clearly outlined by the leading averments of the pleading will be adopted. p. 182.

5. MASTER AND SERVANT.—Injury to Servant.—Complaint.—Construction.—A complaint alleging that plaintiff was employed in defendant's shale bank or pit as a common laborer or shoveler, that defendant's shot-firer was discharged by defendant, and that defendant, knowing that the pit was unsafe, wrongfully and negligently ordered and directed plaintiff to go into such dangerous place and blast and loosen such shale and continue loading cars, does not show that plaintiff was employed as, or accepted the position of shot-firer, but that he was merely transferred temporarily from his employment as a shoveler to that of a shot-firer. p. 182.

6. MASTER AND SERVANT.—Inexperienced Servant.—Duty to Warn and Instruct.—Where the master requires a dangerous service at the hands of an inexperienced servant, it is the duty of the

master to warn him and to give him such instructions as will enable him to avoid injury, unless both the danger and the means of avoiding it are apparent. p. 183.

7. MASTER AND SERVANT.—*Assumption of Risk.—Work Outside Scope of Employment.*—The servant's implied assumption of risk, which is a part of the contract of hiring, is confined to the particular work or class of work for which he is employed, and if he is ordered temporarily to do other work, involving different or greater dangers than those incident to the work within the scope of his employment, he does not, by obeying such orders, necessarily assume the risk incident thereto. p. 183.

8. MASTER AND SERVANT.—*Hazardous Employment.—Assumption of Risk.*—One who enters upon an employment, which is from its nature necessarily hazardous, assumes the usual and ordinary risks and perils of such service. p. 184.

9. MASTER AND SERVANT.—*Employment to Make Dangerous Place Safe.—Assumption of Risk.*—One employed to do the work of making a dangerous place safe, assumes the risks ordinarily incident to such employment. p. 184.

10. MASTER AND SERVANT.—*Assumption of Risk.*—The risks assumed by an employe in any case are those ordinarily incident to the particular work covered by the contract of hiring. p. 184.

11. MASTER AND SERVANT.—*Assumption of Risk.—Right of Servant to Rely on Master Providing Safe Place to Work.—Employment to Make Dangerous Place Safe.*—A servant may ordinarily assume that the master has provided him a safe place in which to work, and rely on that assumption, except as to defects and dangers which he may ascertain by ordinary care for his own safety; and while one who undertakes to make a dangerous place safe may not presume that the master has already done the work he is employed to do, he does not assume all possible risks, but only those incident to such employment. p. 184.

12. MASTER AND SERVANT.—*Injury to Servant.—Work Outside Scope of Employment.—Assumption of Risk.*—Where a complaint against the master for personal injuries proceeds on the theory that plaintiff was employed as a common laborer and while working as such was called upon by defendant to perform temporarily the duties of shot-firer after the discharge of defendant's regular shot-firer, and alleges that plaintiff was assigned to such new duties after the regular shot-firer had reported to defendant that conditions in the place of work were unsafe and had refused to send the men back to work in such place unless he was first permitted to make the place safe, the rule as to assumption of risk, governing where one is employed to make a dangerous place safe, is not applicable. p. 185.

13. MASTER AND SERVANT.—*Injury to Servant.—Verdict.—Answers to Interrogatories.*—Where the allegations of the complaint in a servant's action for personal injuries showed that plaintiff was employed as a common laborer and while working as such was called upon by defendant to perform temporarily the duties of shot-firer in defendant's shale pit, that it was a dangerous place in which to work, but appeared to plaintiff to be safe, that the danger was such that without long experience it was impossible for a person of ordinary prudence and foresight to discern it, that plaintiff had no experience and did not know or appreciate the danger, all of which defendant knew, and that defendant wrongfully and negligently ordered plaintiff to proceed to blast and loosen shale and to load cars in said dangerous place, and that in performing such work plaintiff was injured, a verdict for plaintiff is a finding that such allegations are true, so that a recovery by plaintiff is authorized unless the answers to interrogatories are in irreconcilable conflict therewith.    p. 185.

14. MASTER AND SERVANT.—*Injury to Servant.—Work Outside Scope of Employment.—Duty to Warn and Instruct.*—Where defendant, knowing of the dangerous condition of its shale pit, and knowing that plaintiff was a common laborer and did not understand and appreciate such danger, ordered him, in an emergency, to take the place of shot-firer in such pit, and plaintiff was injured within a few minutes after beginning such duties, the defendant's failure to warn and instruct plaintiff as to the dangers was inexcusable.    p. 186.

15. MASTER AND SERVANT.—*Injury to Servant.—Verdict.—Answers to Interrogatories.*—Where the complaint in a servant's action for personal injuries is on the theory that plaintiff was employed by defendant as a common laborer, and that he was ordered by defendant to perform temporarily the duties of a shot-firer in defendant's shale pit, in the performance of which duties he was injured, a general verdict for plaintiff is not overcome by answers to interrogatories showing that plaintiff was given the position of, and proceeded to discharge the duties of, shot-firer in the place of a shot-firer who had been discharged, since such answers do not conclusively show that plaintiff was employed to take the position in any other sense or to any further extent than that charged in the complaint.    p. 187.

16. APPEAL.—*Review.—Verdict.—Answers to Interrogatories.*—In considering a motion for judgment on answers to interrogatories nothwithstanding the general verdict, all evidence admissible under the issues will be treated as actually in the record, and the court will indulge every reasonable presumption in favor of the general verdict and reconcile such answers therewith, if possible on any reasonable theory within the issues.    p. 188.

17. MASTER AND SERVANT.—*Injury to Servant.—Verdict.—Answers to Interrogatories.*—Where the complaint, in a servant's action for personal injuries, alleged that plaintiff was a common laborer employed in defendant's shale pit, that defendant discharged its shot-firer for refusing to obey defendant's order to have the men work in the pit while it was in a dangerous condition, and that defendant, knowing that the pit was unsafe, wrongfully and negligently directed plaintiff to perform the duties of shot-firer, with knowledge that plaintiff was inexperienced and did not know and appreciate the danger, answers to interrogatories showing that the shot-firer was discharged because of unsatisfactory work, though excluding the idea that he was discharged because he refused to obey orders as alleged in the complaint, do not negative the facts found by the general verdict, that defendant knew and plaintiff did not know the hidden dangers incident to the new duties to which plaintiff was assigned. p. 189.

18. APPEAL.—*Review.—Judgment on Answers to Interrogatories.—Disposition of Cause.*—Where, on appeal, the facts are complicated and close questions of law are involved, and reversible error is found in the action of the trial court in rendering judgment *non obstante veredicto,* a new trial will be ordered rather than judgment on the general verdict. pp. 189, 190.

19. COURTS.—*Appellate Court.—Powers.—New Trial.*—The Appellate Court has the power to order a new trial, and it is its duty to do so, where it appears that the ends of justice will be best subserved thereby. p. 190.

20. NEW TRIAL.—*Rights of Parties.*—The party against whom a general verdict has been rendered, on proper motion, has the right to have the trial court pass on the verdict before judgment thereon is rendered against him. p. 190.

From Fountain Circuit Court; *William B. Durborow,* Special Judge.

Action by William T. Osborn against The Adams Brick Company. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*O. B. Ratcliff,* for appellant.

*John B. Elam, James W. Fesler, Harvey J. Elam* and *Lucas Nebeker,* for appellee.

FELT, J.—Appellant brought this action to recover damages for personal injuries received by him while in the employ of appellee. The case was tried by a jury, which re-

turned a general verdict in favor of appellant together with answers to interrogatories. Appellee's motion for judgment in its favor on the answers to interrogatories was sustained, judgment rendered accordingly, and this appeal taken. The assignment of errors, in substance, raises but one question: Did the trial court err in sustaining appellee's motion for judgment on the answers to interrogatories, notwithstanding the general verdict?

The complaint is long and contains many repetitions. The substance of its material averments is as follows: On May 19, 1908, appellee owned and was operating a certain brick plant in the city of Veedersburg, Indiana; that in connection therewith it was operating a certain shale bank or pit, from which it was procuring "shale" for use in the manufacture of brick; that the top of said shale was irregularly intersected by horizontal and vertical seams and other defects hidden from view and unknown to appellant, and by reason of such defects it broke easily and unexpectedly when not supported; that said shale could be taken from said bank and pit with absolute safety to appellee's employes engaged in such work by first stripping said rock and yellow clay from the top of said shale and removing the shale from the top downward; that on May 19, 1908, appellant, as a common laborer and shoveler for appellee, was at work in said pit loading the shale into cars; that on the morning of said day said bank and pit, near the middle thereof, was in a dangerous condition, in that the yellow clay above the shale had not been stripped therefrom, but, together with the top of said shale stratum, projected about five feet over and beyond the lower part of said shale stratum, and was slowly working and breaking loose from the sandstone and clay above; that by reason of such condition the pit was a dangerous place in which to work, but the same appeared to appellant to be safe; that without long experience in working in and about such banks and pits it was impossible for a person of ordinary prudence and foresight to discern

the slow breaking of the top of such shale, or to appreciate the dangers arising therefrom; that appellant had not had any experience in the management of the work in such pits or in guarding against the dangers thereof, and did not know or appreciate said dangers until after his injury; that on said date one Frank Dawson was in the employ of appellee as shot-firer and foreman in said pit, and as such was doing the blasting and stripping in said pit; that prior thereto said Dawson had several years' experience in operating and working said bank and pit, and similar banks and pits, and by reason thereof knew the nature of said rock, clay and shale, and said defects or seams in the top of said shale, and at this particular time, by reason of his experience and knowledge, could see and did see the slow working and breaking of the top of said shale, and knew and appreciated said dangers arising therefrom, and that such place was unsafe and dangerous; that he immediately notified appellee and its superintendent of said dangers, and although ordered and directed by appellee to put said shovelers to work in such dangerous place, he refused so to do, unless permitted first to make such place safe; that appellee, through its said superintendent and vice principal, wrongfully and negligently ordered, directed and put said shovelers, including appellant, into said unsafe place to load the cars with shale, and discharged Dawson at noon of said day, by reason of his said refusal, and wrongfully and negligently permitted and allowed such place to continue and remain unsafe and dangerous while appellant and the other shovelers were so compelled to work as aforesaid; that appellee knew that appellant did not understand or appreciate said dangers, and wrongfully and negligently failed to notify appellant thereof, and further wrongfully and negligently ordered appellant to go into said dangerous place immediately to blast and loosen shale, and to continue loading cars; that appellant in pursuance of said orders went into- said pit, and while working therein a large amount of said shale

and stratum fell upon and against him, and covered and crushed the lower part of his body.

The answers to the interrogatories, as far as material, in substance, show that the embankment around said shale pit was 30 or 40 feet high, and was made up of shale, sandstone, rock, gravel and earth; that at the time appellant was injured there was a projection of shale extending out from said embankment about 5 feet above the bottom of the pit, which had been there on said day from about 8 o'clock in the morning; that appellant was injured about 1:15 p. m. of said day, and had worked there from morning until that time; that there were three tracks running into said pit; that Frank Dawson "the shooter" fired a shot between 7 and 8 .a. m. of said day, at the bottom of the pit near the end of the middle track and said projection; that about the middle of the forenoon of said day appellant, and his fellow workmen were ordered by said Dawson from the middle track to the east track, because of the danger from said projection; that Dawson was discharged at noon of said day by appellee, because his work was unsatisfactory, and for no other reason, and appellant was given his place as "shooter" on the same day and before the accident occurred, and accepted the place and proceeded to discharge his duties as such "shooter"; that appellant was an adult person, in the possession of all his senses; that he could not by looking have seen the "working" of shale and other substances; that it was the duty of the "shooter" to clear away the projection of shale, gravel and other substance above the place where the clay or shale was mined out; that appellant received no specific instructions from appellee as to the manner in which he should perform his duties as such shooter.

Appellant contends that the court erred in sustaining appellee's motion for judgment on the answers to the interrogatories, for the alleged reason that they do not show that he assumed the risk, or that he was guilty of negligence contributing to his injury.

The motion for judgment on the answers to interrogatories can only be sustained where the facts so found are in irreconcilable conflict with the general verdict. Every reasonable presumption is indulged in favor of the general verdict, and nothing is presumed in favor of the answers to the interrogatories. The facts found by such answers must be sufficient to overcome any evidence legitimately admissible under the issues before a judgment is authorized on such finding of facts. *Indiana Union Traction Co.* v. *Scribner* (1911), 47 Ind. App. 621, 628, 93 N. E. 1014; *Southern R. Co.* v. *De Pauw* (1910), 174 Ind. 608, 614, 92 N. E. 225.

In determining whether the answers to interrogatories are in irreconcilable conflict with the general verdict, we may be assisted by first determining the theory of the complaint. This must be determined from its general scope and tenor, and not from fragmentary statements, detached parts or conclusions. That theory will be adopted which is most apparent and clearly outlined by the leading averments of the pleading. *Oölitic Stone Co.* v. *Ridge* (1908), 169 Ind. 639, 643, 83 N. E. 246; *State, ex rel.,* v. *Scott* (1908), 171 Ind. 349, 354, 86 N. E. 409; *Flowers* v. *Poorman* (1909), 43 Ind. App. 528, 531, 87 N. E. 1107.

Tested by this rule, the complaint shows that appellant was employed as a common laborer to shovel in appellee's pit, and that on Dawson's discharge he was changed from that position and ordered to discharge the duties previously performed by Dawson. It is not averred that he was employed as, or accepted the position of shotfirer, or "shooter"; but after showing Dawson's discharge, it is clearly averred that appellee "wrongfully and negligently ordered and directed him to go into said dangerous place immediately and blast and loosen such shale therein and continue loading cars." In other words, he was employed

as a shoveler, and temporarily transferred from that employment to that of a "shooter", for the duties assigned him were those formerly discharged by Dawson.

This theory of the complaint makes it important to ascertain the duty of appellee when it placed appellant in the position of a shot-firer, which required knowledge, skill and experience not required of a common laborer. The 6. master may not expose an inexperienced servant, at whose hands he requires a dangerous service, to such dangers without giving him warning. He is also required to give him such instructions as will enable him to avoid injury, unless both the danger and the means of avoiding it are apparent. This duty does not extend to employes of mature age who are familiar with the work they are called on to do and the risks incident thereto, but it does extend to inexperienced employes of mature years as well as to those of tender age. *Atlas Engine Works* v. *Randall* (1885), 100 Ind. 293, 296, 50 Am. Rep. 798; *Republic Iron, etc., Co.* v. *Ohler* (1903), 161 Ind. 393, 402, 68 N. E. 901; 4 Thompson, Negligence §4065.

The servant's implied assumption of risks, which accompanies and is a part of the contract of hiring, is confined to the particular work or class of work for which he is 7. employed, and if the master orders him temporarily to do other work, involving different or greater dangers than those incident to the work within the scope of his employment, he will not by obeying such orders necessarily assume the risks incident to such other work. When 6. such change of employment takes place, the master owes the duty of warning the servant of the dangers incident to the work so required of him, and likewise the duty of giving him instructions, where he is not familiar with the new duties to which he is so assigned. Where the master knows the servant so intrusted with new duties involving other or greater hazards is inexperienced in such work, and ignorant of the dangers incident thereto, the duty

to warn and instruct is imperative, and failure so to do makes him liable for an injury resulting from such failure, where the servant has not negligently contributed thereto. *Pittsburgh, etc., R. Co. v. Adams* (1886), 105 Ind. 151, 164, 5 N. E. 187; *Republic Iron, etc., Co. v. Ohler, supra,* 403; *Newcastle Bridge Co. v. Doty* (1907), 167 Ind. 259, 264, 79 N. E. 485; *Cincinnati, etc., R. Co. v. Madden* (1893), 134 Ind. 462, 471, 34 N. E. 227.

It is true, as asserted by appellee, that where a person enters on an employment which is from its nature necessarily hazardous, he assumes the usual and ordinary risks and perils of such service. It is likewise the law that one employed to do the work of making a dangerous place safe, assumes the risks ordinarily incident to such employment. The very nature of such work enlarges or multiplies the risks assumed by such an employe, but the rule in such case is not essentially different in principle from that applicable to any employe. In any case the risks assumed are those *ordinarily* incident to the particular work covered by the contract of hiring. The difference arises not from principle but from the character of the work the employe undertakes to do. The servant may ordinarily assume that the master has provided him a safe place in which to work, and rely on that assumption except as to defects and dangers which he may ascertain by ordinary care for his own safety. The one who undertakes to make a dangerous place safe may not presume that the master has already done the work he is employed to do. He represents the master in such work, but the relation of master and servant nevertheless exists between them, and he does not by virtue of his undertaking to make a dangerous place safe assume all possible risks, but only those ordinarily incident to such employment.

But in this case the theory of the complaint and the facts found do not justify the application of the rule invoked,

·where an employe expressly or impliedly undertakes to make a dangerous place safe. For, as already shown, the complaint proceeds on the theory that appellant was employed and worked as a common laborer, and while so doing was called on by appellee to discharge the duties of shot-firer after Dawson's discharge. It is also averred that he was assigned to these new duties after Dawson had reported to the master that the conditions then existing in the pit made it dangerous to continue working therein, and that Dawson had refused to send the workmen back·into the pit on account of such dangers, unless he was first permitted to make the place safe. It is not directly averred that appellant was employed as "shooter", and undertook generally or for any considerable length of time to discharge the duties of that position, but it is charged that he was ordered into the pit after Dawson's discharge at noon, "immediately" to blast and loosen shale, which clearly shows the character of his work, the emergency and the change in the kind of work appellant was called on to do.

It is further charged in the complaint that on the day of the accident, the pit was a dangerous place in which to work, but it appeared to appellant to be safe; that the projecting part of said bank was slowly working and breaking loose from the sandstone and clay above; that without long experience in working in such a pit it was impossible for a person of ordinary prudence and foresight to discern the breaking and loosening of the shale, or to know and appreciate the danger arising therefrom; that appellant had no experience in such matters or in guarding against the dangers thereof and did not know or appreciate said danger; that appellee knew he did not have such skill and experience or know of said dangers; that Dawson, the "shooter", had such skill and knowledge, and knew the peculiar properties of shale, and how to detect in advance indications of an approaching cave or fall; that he knew and appreciated the danger on the day of appel-

lant's injury, and notified appellee thereof; that appellee discharged Dawson at noon of said day, and wrongfully and negligently ordered appellant to proceed to blast and loosen shale and to load cars in said dangerous place; that appellant went to work in pursuance of said orders, and was injured as alleged. The general verdict finds all of the foregoing allegations to be true, and they are sufficient to warrant a recovery, unless the answers to the interrogatories are in irreconcilable conflict therewith. The answers to the interrogatories show that after Dawson's discharge at noon, appellant was given his place as "shooter"; that he accepted the place, proceeded to his work, and was injured at 1:15 o'clock p. m.

Appellee knowing that appellant was a common laborer, in the emergency put him in the place of the "shooter", whose duties required him to do the work of placing the pit in shape for the removal of the shale; he accepted the place, went to work, and was injured about 15 minutes thereafter. He did not have the requisite skill and experience to detect the latent dangers of the pit, and did not know or appreciate the peculiar danger that resulted in his injury. Appellee knew of said dangers, knew that the pit was at that time an unsafe place in which to work, that appellant did not know, understand or appreciate said dangers, and yet appellee wholly failed to warn him thereof.

On this state of facts, Did appellee owe appellant any duty when it placed him in the position of "shooter"? This question must be answered in the affirmative, and the fact that he was called from one kind of work to another, requiring different knowledge and more skill and experience, under all the authorities, instead of relieving appellee from responsibility, only emphasizes its duty, enjoined by the law, to warn appellant of known dangers and of those it might ascertain by reasonable care and inspection. But here appellee is shown to have received positive information that the pit was dangerous, and also knew appellant was

a common laborer, that he did not know the peculiar dangers of the pit, and did not possess the skill and experience that would enable him to ascertain such dangers for himself. This makes appellee's failure to warn inexcusable.

But it is contended that notwithstanding appellee failed to warn appellant of the dangers known to it, judgment was rightfully rendered for appellee on the answers to the interrogatories. In support of this contention it is said that the answers show conclusively that appellant was employed as "shooter"; that he accepted the employment, and was injured while in the discharge of the duties of that position; that he assumed the risks of his new position, and cannot recover.

Conceding that appellant was regularly employed as "shooter", and that he accepted the place and undertook to discharge the duties of the position generally, there may be serious doubt, on the facts of this case, even on such theory, that appellant assumed the risks of which he was ignorant, which were known to appellee, who likewise knew that appellant did not know thereof and that he did not possess the requisite skill and experience to detect the dangers for himself, and yet failed to give him any warning or instruction. But in our view of this case we are not called on to decide that question, because of other reasons, some of which have already been pointed out, which show that it was error to sustain the motion for judgment on the answers to the interrogatories.

The answers do show that after Dawson's discharge, appellant was, in the afternoon, prior to the accident, given Dawson's place as "shooter", and that he proceeded to the discharge of the duties of the position, that he came into the pit at 1 o'clock and was injured at 1:15 o'clock p. m. But these facts are not necessarily in irreconcilable conflict with the general verdict. The verdict was a finding in appellant's favor as to all the material facts averred in the complaint, and the interrogatories do not

conclusively show, as against such finding, that appellant was employed to take the position of shot-firer, in any other sense or to any further extent than that charged in the complaint, which, as already shown, was brought about by the emergency occasioned by Dawson's discharge, and falls within the rule of a change from one kind of employment to another kind involving greater and different hazards, and requiring more skill and experience than *the employment from which the servant was called. Such change of employment does not evidence the contractual relation of one who undertakes the responsibility of making a dangerous place safe.

Standing alone and unexplained, the answers to the interrogatories are insufficient to overcome the general verdict, which amounts to a finding that appellant was, in the emergency, temporarily called on to discharge the duties of shot-firer. But under the issues, testimony was admissible to show that the arrangement by which appellant undertook to discharge the duties of "shooter" was only temporary, for the purpose of meeting the existing emergency and keeping the work going in the pit; that appellant was not to continue permanently in the position, but remained in appellee's employ under his original contract of hiring, and was by order of appellee temporarily transferred from the work he was employed to do and called on to discharge new and different duties.

Under the rule for considering a motion for judgment on the answers to interrogatories, we are to determine the question as though such testimony was actually in the record, and, indulging every reasonable presumption in favor of the general verdict, reconcile the answers to the interrogatories therewith, if it can be done on any reasonable theory possible within the issues. When this is done, it is quite plain there is no such conflict between the special finding of facts and the general verdict as the law

declares sufficient to overcome the latter and warrant a judgment on the former.

The contention that Dawson's discharge was on account of his refusal to obey appellee's order to have the men under him work in the pit at the place where appellant was injured is not sustained, for the answers to the interrogatories show that he was discharged because of unsatisfactory work, and for no other reason. This excludes the idea that he was discharged because of his refusal to obey orders as alleged in the complaint, but does not negative the fact found by the general verdict, that appellee knew and appellant did not know the peculiar properties of shale and the hidden dangers incident to the new duties to which appellant was assigned. Nor does such finding negative the fact that appellee knew that appellant did not know or appreciate such peculiar and hidden dangers when he was sent back to work after Dawson's discharge.

The so-called gravel pit cases to which reference has been made are not controlling in this case, because of the theory of the complaint.

For reasons already stated, the judgment is reversed, with instructions to the lower court to overrule the motion for judgment on the answers to the interrogatories, and to render judgment on the verdict of the jury.

Hottel, C. J., Adams, P. J., and Myers, Lairy and Ibach, JJ., concur.

## On Petition for Rehearing.

Felt, P. J.—On reëxamination of the questions involved in this appeal we are satisfied with the conclusions announced in the original opinion, but we believe the mandate should be modified. Where a general verdict is returned in favor of one of the parties, and his adversary obtains judgment in his favor on the answers of the jury to interrogatories, notwithstanding the general

verdict, this court cannot know, unless it be in exceptional cases, that a new trial would not have been granted the losing party on application, had the motion for judgment on the answers to the interrogatories been overruled.

In any event, this court has the power to order a new trial, and it is its duty so to do, where it appears that the ends of justice will be best subserved by so doing.

The court, in sustaining the motion for judgment on the interrogatories, granted appellee relief of a different and higher character than that obtainable by a motion for a new trial, and which, but for the error of the court, left no occasion or necessity for a new trial. But appellee should not on account of such ruling have judgment rendered against it, without on opportunity to retry the case. The party against whom a general verdict has been rendered, on proper motion has the right to have the trial court pass on the verdict before judgment thereon is rendered against him.

But for the action of the trial court in sustaining the motion for judgment on the answers of the jury to the interrogatories, appellee might have obtained a new trial on motion duly made for causes which may exist, and on which no court has passed judgment.

In a case where the facts are complicated and close questions of law are involved, and in which this court finds reversible error in the action of the trial court in rendering judgment *non obstante veredicto*, the ends of justice will generally be best subserved by ordering a new trial, unless it be in exceptional cases where the facts specially found of themselves clearly indicate that the party who obtained the general verdict is entitled to judgment. *Shoner* v. *Pennsylvania Co.* (1892), 130 Ind. 170, 179, 28 N. E. 616, 29 N. E. 775; *Brown* v. *Ohio, etc., R. Co.* (1894), 138 Ind. 648, 657, 37 N. E. 717, 38 N. E. 176; *Masterson* v. *Southern R. Co.* (1908), 170 Ind. 296, 298, 80 N. E.

505; *Citizens St. R. Co.* v. *Reed* (1902), 28 Ind. App. 629, 63 N. E. 770; *Columbia Creosoting Co.* v. *Beard* (1913), *post* 260, 99 N. E. 823.

Applying the foregoing propositions to the facts of this case, we believe the ends of justice will be best subserved by ordering a new trial.

The petition for rehearing is therefore overruled, and it is ordered that a new trial be granted, with leave to amend the pleadings if desired, and for further proceedings not inconsistent with this opinion, and that the mandate of the original opinion be, and the same is modified accordingly.

NOTE.—Reported in 99 N. E. 530, 100 N. E. 472. See, also, under (1, 2, 3) 38 Cyc. 1927; (4) 31 Cyc. 84; (5) 26 Cyc. 1384; (6) 26 Cyc. 1165; (7) 26 Cyc. 1221; (8) 26 Cyc. 1188; (9, 10) 26 Cyc. 1177; (11) 26 Cyc. 1182; (13, 15, 17) 26 Cyc. 1513; (14) 26 Cyc. 1165; (16) 38 Cyc. 1927; (18, 19) 3 Cyc. 454. As to assumption of risk as affecting an employe's right to recover for personal injuries, see 97 Am. St. 884. As to the duty to warn or instruct servant, see 44 L. R. A. 33. As to the duty of a master to adopt rules to protect servant, or to warn him against dangers not reasonably to be apprehended, see 21 L. R. A. (N. S.) 89. As to instructing minor servant who is of insufficient age or capacity to comprehend dangers of employment as affecting master's responsibility, see 8 L. R. A. (N. S.) 284. As to the assumption of obvious risks of hazardous employment, see 1 L. R. A. (N. S.) 272. Servant's assumption of risk of danger imperfectly appreciated, see 4 L. R. A. (N. S.) 990. As to the assumption of risk of dangers created by the master's negligence, which might have been discovered by the exercise of ordinary care on the part of the servant, see 28 L. R. A. (N. S.) 1250. On the question of a servant's right of action for injuries received in obeying a direct command, see 48 L. R. A. 753; 30 L. R. A. (N. S.) 436. As to servant's assumption of risk in obeying orders to perform obviously dangerous work, see 4 L. R. A. (N. S.) 830.