## NATIONAL FIRE PROOFING COMPANY *v.* SMITH, ADMINISTRATOR.

[No. 7,578. Filed November 20, 1912. Rehearing denied March 14, 1913. Transfer denied December 10, 1913.]

1. PLEADING. — *Complaint.* — *Theory.* — The theory of a complaint must be determined from a consideration of its leading averments and its general scope and tenor, and the theory most apparent and clearly outlined will be adopted rather than any possible theory that may be indicated by a consideration of detached parts and fragmentary statements, or by the conclusions of the pleader. p. 136.

2. PLEADING.—*Complaint.—Theory.*—A complaint framed upon a definite theory ascertainable from a consideration of its averments, must be good upon that theory or it will be held insufficient. p. 136.

3. MASTER AND SERVANT.—*Injuries to Servant.—Duty to Warn Inexperienced Servant.*—Before a master exposes an inexperienced servant to dangers that are not apparent to one of his skill and experience, he is required to warn him thereof and to give him such instructions as will enable him, by the exercise of ordinary care, to avoid injury. p. 137.

4. MASTER AND SERVANT.—*Injuries to Servant.—Assumption of Risk.*—While a servant assumes all the risks ordinarily incident to his employment, where his master temporarily requires of him services involving different duties and hazards not within the scope of his employment, the servant assumes only those risks which he may ascertain by the exercise of ordinary care for his own safety, and the master's failure to instruct and warn the servant renders him liable for injury resulting from such failure, where the servant is free from contributory negligence. p. 137.

5. MASTER AND SERVANT.—*Injuries to Servant.—Knowledge of Defect or Danger.—Pleading.—Proof.*—As a matter of pleading, it is only necessary that the complaint, in a servant's action for personal injuries, should allege that the servant did not know of the

alleged defect or danger in order to exclude both actual and implied knowledge on his part; but as a matter of proof to sustain such averment the plaintiff must not only show a want of such knowledge, but that it could not have been acquired by the exercise of ordinary care.   p. 138.

6.  MASTER AND SERVANT.—*Injuries to Servant.—Knowledge of Danger.—Assumption of Risk.*—A servant, merely knowing that there is some danger without appreciating it, does not thereby assume the risk within the meaning of the rule that debars recovery, nor does knowledge of danger necessarily show negligence on his part.   p. 138.

7.  MASTER AND SERVANT.—*Injuries to Servant.—Complaint.—Contributory Negligence.—Assumption of Risk.*—The complaint in an action for the death of a servant, showing the peculiar and hidden dangers incident to the work that decedent was performing, his ignorance of such dangers and his want of skill and experience in relation thereto, defendant's knowledge thereof, and its failure to warn decedent on transferring him to such work which involved dangers not incident to his employment, is not insufficient on the ground that such averments are nullified by other allegations tending to show decedent's opportunity for knowing and appreciating the danger, since such allegations do not amount to an affirmative showing that he assumed the risk or that his negligence contributed to the injury.   p. 139.

8.  MASTER AND SERVANT.—*Injuries to Servant.—Knowledge of Danger.—Jury Question.*—Where a servant was injured while performing work to which he had been temporarily assigned, and involving duties and dangers not incident to his regular employment, the question of whether the risks incident to his new duties were visible and could have been ascertained by him in the exercise of ordinary care, or were such as required knowledge or experience to detect, and whether he was ignorant of such dangers, and defendant knew or could have known thereof, were for the jury.   p. 139.

9.  MASTER AND SERVANT.—*Injuries to Servant.—Verdict.—Answers to Interrogatories.*—Where the complaint for the death of a servant who received his injuries while adjusting a belt on a pulley, alleged that decedent had been temporarily assigned to discharge the duties of another servant who was absent, and that putting the belt in question on the pulley was a part of the duty of such absentee's position, answers to interrogatories showing that decedent was not specially directed to put the belt on, and that defendant's officers did not know at the time that he was attempting so to do, are not in conflict with a verdict for plaintiff.   p. 140.

10.  MASTER AND SERVANT. — *Injuries to Servant. — Verdict. — Answers to Interrogatories.*—In an action for the death of a servant

whose injuries were received while placing a belt upon a pulley, which work was one of the duties of the employment to which he had been temporarily assigned, answers by the jury to interrogatories showing that the work he was performing was not a part of his regular employment and was more hazardous, and that decedent knew of the worn and defective condition of the belt, and the effect caused by the dressing used upon it, but which did not show that he knew and appreciated the danger of being injured because of the condition of such belt, were not in conflict with a verdict for plaintiff as showing that the dangers were open and obvious and that decedent in the exercise of ordinary care must have known of them.  p. 140.

11.  MASTER AND SERVANT. — *Injuries to Servant.* — *Verdict.* — *Answers to Interrogatories.*—In an action for the death of a servant whose injuries were sustained while placing a belt on a pulley, which was a duty connected with work to which he had been temporarily assigned, answers to interrogatories showing that decedent attempted to place the belt while the machinery was in motion will not overcome the general verdict for plaintiff, notwithstanding it was further shown by the answers that defendant had a system of signals and a device for stopping the machinery in such emergencies, where other answers showed that decedent did not know that such device could be so used, that it had not theretofore been used, that it was not the speed of the pulley that caused the injury, that it was the custom to place the belt while the machinery was in operation, and that decedent had never been instructed to use the system of signals or the device for stopping the machinery.  p. 141.

12.  TRIAL.—*Verdict.*—*Answers to Interrogatories.*—Contradictory answers to interrogatories nullify each other, and a judgment cannot be based upon answers that are not inconsistent with the general verdict.  p. 142.

13.  MASTER AND SERVANT.—*Injuries to Servant.*—*Method of Work.*—In an action for the death of a servant, whose injuries were sustained while placing a belt on a pulley, a showing that for more than a year previous to the accident it had not been customary to stop the machinery to put such belt on the pulley is sufficient to establish that such method had the sanction and approval of the master.  p. 142.

14.  MASTER AND SERVANT.—*Injuries to Servant.*—*Method of Work.*—A master who calls upon an inexperienced servant to discharge hazardous duties not previously required of him, and fails to instruct the servant as to the manner of doing the work, cannot, in case of injury to the servant, complain of the method employed by the servant in attempting to perform the work, where he followed the plan and used the means employed by his superi-

National Fire, etc., Co. *v.* Smith—55 Ind. App. 124.

ors with the knowledge of the master; hence where a servant, injured in the performance of work to which he had been temporarily assigned, had knowledge of a system of signals, but was not instructed to use them, and it was long the custom known to the master to do the work he was attempting without using same, the fact of such servant's knowledge does not of itself bring the case within the rule applicable where a servant voluntarily chooses the more dangerous of two ways that are open to him, but such knowledge was proper to be considered on the question of contributory negligence. p. 143.

15. MASTER AND SERVANT.—*Injuries to Servant.—Verdict,—Answers to Interrogatories.—Complaint.*—Every presumption is indulged in favor of the general verdict, and for the purpose of reconciling answers to interrogatories with it, the court on appeal may consider whatever might have been admitted under the issues; hence where the complaint averred that decedent was injured in about fifteen minutes after being temporarily assigned to discharge the duties of another employe, answers by the jury showing that decedent had discharged the duties of such other employe for four days will not be controlling, since evidence was admissible to show that decedent pursued his regular work except at intervals when called upon to discharge a duty of such other employe. p. 143.

16. TRIAL. — *Instructions. — Burden of Proof.* — Instructions that plaintiff is required to prove all the material allegations of his complaint by a fair preponderance of the evidence, that it is not meant that he is required to prove every allegation, but that he must so prove enough of the allegations to make out a case against the defendant, were not erroneous in what they stated, but were incomplete. p. 144.

17. APPEAL.—*Instructions.—Necessity for Request.*—Objections on the ground of the incompleteness of instructions are waived, where appellant failed to request fuller instructions. p. 145.

18. TRIAL.—*Proof.—Allegations of Complaint.*—Immaterial allegations in a complaint need not be proven to warrant a recovery, and literal proof of the material allegations is not essential, but it will suffice if the substance of the issue tendered has been proven by a fair preponderance of the evidence. p. 145.

19. APPEAL.—*Review.—Harmless Error.—Instructions.*—In an action for the death of a servant, the giving of instructions that plaintiff need not prove every allegation in his complaint, but that it was sufficient if he proved some allegation of negligence, is harmless, where it appears from the jury's answers to interrogatories that the verdict for plaintiff was based on the defendant's negligence in furnishing a defective belt which decedent was attempting to place on a pulley, and other instructions were given

relative to the condition of the belt, and informing the jury that there could be no recovery unless decedent was free from contributory negligence. p. 145.

20. APPEAL.—*Review.*—*Harmless Error.*—*Instructions.*—No harm resulted from the giving or refusing of instructions, where those given, taken as a whole, state the law correctly. p. 146.

From Lake Superior Court; *Virgil S. Reiter,* Judge.

Action by Charles C. Smith, administrator of the estate of Frank Shearer, deceased, against the National Fire Proofing Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*William J. Whinery,* for appellant.

*Lynn, Baumer & House, Peter Crumpacker* and *Fred C. Crumpacker,* for appellee.

FELT, J.—Appellee brought this action to recover damages for injuries, resulting in the death of the decedent, Frank Shearer, while in the employ of appellant. Trial by jury resulted in a verdict for appellee in the sum of $4,000, upon which judgment was rendered.

Appellant's assignment of errors challenges the sufficiency of the facts alleged in each paragraph of appellee's amended complaint to state a cause of action. The first paragraph, after the formal averments, charges in substance that appellant owned and operated a plant for the manufacture of tile, brick, tile-roofing and other like products; that several months prior to his injury, Shearer was employed by appellant as a carpenter to work in said plant and was so engaged exclusively up to the time of his injury; that during all of that time, appellant employed in said plant one John Pierce, as master mechanic, who had charge of all the machinery, shafting, pulleys, belts, tools and appliances in the plant and whose duty it was to keep the same in proper repair, and to see to the oiling and running thereof; that on March 23, 1907, Pierce was temporarily called away from said plant, and decedent was taken away from his regular work by the order and direction of appellant, through its agent

and vice principal, one Ben Butler, and temporarily directed
to do a part of the work of Pierce during his absence; that
Butler had charge of the running and operation of said
plant and control of the men employed therein, including
decedent; that he had power and authority to direct dece-
dent to do temporarily the work of Pierce; that at the time
of decedent's injury, and for many months prior thereto,
appellant maintained a certain main horizontal power shaft
in its plant which was elevated about ten feet above the
floor thereof; that on that shaft were many pulleys from
which belts ran to other pulleys and operated the various
machines in the plant; that none of the belts or machines
could be operated separately, but it was necessary during
all of said time to stop the whole machinery in the plant
in order to stop any portion thereof, all of which was well
known to appellant; that appellant, up to and at the time
of decedent's injury, carelessly and negligently used, for
the purpose of propelling the machinery, an old, wornout
and decayed belt which was dangerous to those whose duties
brought them in contact with it, and was unsafe for the
proper and safe operation of appellant's machinery; that
owing to its condition, the belt frequently came off the pulley
over which it ran, and on many occasions prior to the time
when decedent was injured, it was necessary for appellant
to readjust the wornout belt upon the pulleys; that on ac-
count of its worn, thin and soft condition and long continued
use it would give and stretch, and in order to make it stick
to the pulleys over which it ran and which it operated, and
in order to make it perform the work it was intended to
perform, appellant had for many months prior to dece-
dent's injury carelessly and negligently used upon the belt
a certain belt dressing called "stickum," which was a sticky
substance and which was used for the purpose of keeping
the plies of the belt together, and in making it adhere to
and move the pulleys and prevent the belt from slipping

upon the pulleys; that said "stickum" when used upon the belt in its defective condition made it liable to fold and double on itself when it came off the pulleys and to adhere to itself and adhere to the main shaft around which it was placed, and made it likely to stick to and enfold anything it came in contact with when it was off of its proper place on the pulleys; that by reason of the condition of the belt and the use of the "stickum" thereon, it was highly dangerous to the employes of appellant, working about it or near the shafting, all of which was at all times well known to the appellant, and which was neither known to nor appreciated by the decedent; that decedent was unlearned and unskilled in the duties of Pierce's position, as alleged, to which he was so assigned on the occasion of his injury; that he did not know, realize or appreciate the danger of working in and about the belt, or in putting the belt on the pulley when it came off; that he did not know or realize the condition of the belt, nor did he know or realize that the "stickum" was liable to cause the belt to fold on itself and to wrap about the shafting and about anything in close proximity thereto; that the decedent had not worked about said belt and machinery for more than fifteen minutes, at the time of his injury and was wholly unacquainted with the condition of the belt and of the dangers therefrom, and had had no experience whatever in readjusting such belts in the condition which such belt was in at the time, nor any experience or knowledge in the use of "stickum" on such belts; that the appellant knew, or ought to have known, during all of said time, that it was unsafe and highly dangerous to use the belt and that decedent was wholly ignorant of, and did not appreciate the dangers; that appellant negligently failed and refused to tell decedent, or in any manner notify or warn him of the danger or of the condition of the belt, or of its being likely to fold upon itself and upon the shaft and wrap about the same and about any person or thing coming in contact with it, when it was off of the pulley;

that appellant negligently failed and refused at all times to provide any appliance, instrument, tool or machinery with which to adjust the belt from the floor and place the same upon the upper pulley when it came off of the same; that it had always been the custom and practice at and before the time the decedent was injured, to adjust the belt by placing a ladder, which appellant furnished for that purpose, against an upright post near to and within three feet of such upper shafting and pulley whereby the person adjusting the belt could climb to the top of the ladder and, with one arm around the post, reach out with the other, take hold of the belt and put it upon the upper pulley, while others put it upon the pulley below; that the upper pulley is about nine feet higher than the lower one; that on March 23, 1907, the belt came off the pulleys over which it ran and, in obedience to the orders of appellant's vice principal, Butler, and while temporarily in the performance of the duties of Pierce, decedent attempted to put the belt upon the upper pulley; that while decedent was upon the ladder in the manner aforesaid and attempting to adjust the belt and put the same upon the upper pulley, as aforesaid, in obedience to the orders and in compliance with his duty, his hand and arm were caught by the belt by reason of the belt doubling upon itself and adhering to the upper power shaft and pulley, and he was thereby and by reason thereof thrown into said belt and pulley and twisted around the pulley and shaft and could not extricate himself therefrom; that the shaft was at the time revolving at the rate of about three hundred revolutions per minute, which was its usual rate of speed when the machinery was in operation; that by reason thereof decedent was whirled so rapidly around the shaft and against the ceiling of the building that his arm was pulled off at the shoulder and he was so bruised, lacerated and injured thereby that he died within a few minutes thereafter from his injuries; that decedent's injuries and death were due solely and entirely to the negligent acts of

appellant; that neither decedent nor appellee was guilty of any negligence whatever that contributed in any manner to decedent's injuries or death.

The second paragraph contains in substance all of the allegations of the first paragraph with the additional averments that on the afternoon before the injury and death of decedent, one Owens, who was appellant's general manager, and vice principal, made certain repairs on the belt which caused decedent's injury; that he then pronounced the belt safe and sufficient until appellant had reasonable time to secure a new belt, which he said would be done in a few days; that decedent heard the assurance of safety by Owens, relied thereon, believed it to be true and that the belt was safe and sufficient; that he did not see any defects in the belt thereafter and could not, by the exercise of reasonable diligence and care upon his part, have known and discovered that the belt, notwithstanding the repairs and statements of the manager, was still old, wornout, unsafe, sticky and dangerous; that notwithstanding the repairs and statements, the belt was defective and practically and substantially in the same condition that it was in before the repairs were made.

The answers to the 387 interrogatories the jury was required to answer, show, in substance, that the decedent had been in appellant's employment about five years prior to March 23, 1907, as a carpenter and as helper to the blacksmith and machinists; that he was 42 years of age, possessed of all his faculties and of ordinary intelligence; that it was the duty of one Pierce to oil the machinery and look after the belts and belting and general running of the machinery; that it was not a part of decedent's duty to take Pierce's place whenever he was absent; that decedent had performed Pierce's work for four days continuously immediately preceding March 23, 1907, and for one day about two years previously; that he was not working in the line of his employment at the time he was injured; that he was injured at about 6:30 or 7 a. m. on March 23, 1907, while temporarily

performing the duties of Pierce, appellant's regular oiler; that the belt in question was a badly worn rubber belt about six inches wide and the pulley over which it ran revolved at the speed of from 200 to 285 revolutions per minute; that it was not a part of Shearer's duty to replace the belt when it came off save when he was taking Pierce's place; that he had replaced the belt on the pulley three or four times during the week prior to the day of his injury; that the belt was not in the same state of repairs during all of that time but a piece of it had been cut off on March 23, 1907; that in the two years prior to March 23, 1907, the belt had become loose and badly worn and decedent had several opportunities to observe the condition of the belt during that time; that a person of ordinary intelligence who had frequently put a belt on a pulley running 280 revolutions a minute and had had no accident, would not consider it very dangerous to place the belt on the pulley while running at that speed; that there was a system of signals in operation in appellant's plant to regulate the running of its engine and machinery; that the signals were known to decedent; that it was a part of Shearer's duties to assist in repairing machines and machinery, belts and belting, in appellant's plant, on and prior to March 23, 1907, and he had assisted in making such repairs; that had decedent signalled appellant's engineer to stop the machinery it would have been the latter's duty to have done so and it would have taken only about 30 seconds to have stopped or slackened the speed of the pulley and it would have taken about 15 seconds to have given such signal; that there was a clutch provided whereby the line shaft and pulley in question might be stopped without stopping the other machinery but such clutch could not be used when there was a load on the machinery; that decedent did not know the clutch could be so used and it was not in fact so used; that it would have been safer for decedent to have done the work in question had he caused the line shaft and pulley to be stopped or the

speed thereof slackened; that the injury to Shearer was caused by the belt folding around his arm on the line shaft; that Shearer was not directed by any officer, superintendent, foreman or agent of appellant to replace the belt on the occasion of his injury and they did not know of his intention to do so; that the belt in question was old and badly worn and decedent knew of its condition; that between March 19, 1907, and March 23, 1907, decedent himself repaired the belt by cutting off a loose piece of the same; that appellant, through its agents, was better informed as to the condition of the belt in question than was Shearer; that the agents had more experience with belts than he; that it was Shearer's duty while taking Pierce's place to replace belts and at the time of his injury he was attempting to replace the belt at the request of one of appellant's workmen; that Shearer did not realize the work he was attempting to do was dangerous, as he had performed the same before and had seen others do so without injury; that he knew of the worn and pliable condition of the belt prior to the time of his injury; that the belt had wrapped around the line shaft once before during the week preceding his injury and he had unwrapped it on that occasion but he had never been caught by the belt nor had he seen any one so caught, and he did not know of the great danger of being caught; that the danger of the belt wrapping around the shaft was greater when the shaft and pulley were revolving at a rate of 280 revolutions per minute, than when they were revolving slowly but there was no evidence that Shearer knew this; that the fact that the belt was old, worn, limber and sticky caused it to fold and wrap upon itself; that it was not the speed of the shaft and pulley which caused the belt to fold and wrap upon itself, but it was the belt dressing on it; that Shearer himself placed on the belt all the dressing which had been used on it during the four days immediately preceding the occasion of his injury; that the risks, dangers and hazards which decedent encountered at

the time of his injuries did not belong to his regular employ-
ment and in his regular employment, decedent had nothing
to do with the belt; that it was the custom and practice in
appellant's plant to put the belt on while the machinery
was running at its usual rate of speed; that the regular
oiler for more than a year prior to decedent's injury had
not caused the machinery to be stopped merely for the
purpose of putting on a belt; that such custom and practice
was generally known in appellant's plant and was known
to decedent; that Pierce, the regular oiler, knew of the
dangerous condition of the belt and had known it for some
months prior to decedent's injury; that it required a skilled
man to understand and appreciate the danger incident to
the putting on of the belt, and Shearer was not so skilled;
that he was a reasonably prudent and careful man; that
he had never induced appellant or its agents having control
over him to believe or think that he was skilled in the matter
of handling and putting on belts; that the catching and
wrapping of the belt around Shearer's arm was the direct
cause of his injuries and he died by reason of such injuries;
that he did not realize the dangers from the belt before it
commenced to wrap about his arm and he could not have
extricated his arm after the belt had wrapped about it;
that had the belt been in a reasonably good condition at
the time in question, it could have been put on the pulley
while the same was moving in the usual manner without
great danger to the person putting it on and a reasonably
careful and prudent person, if skilled in putting on belts,
would have undertaken to put on such a belt while the
machinery was going at its usual rate of speed; that appel-
lant at all times had full knowledge of the condition of the
belt before the time of Shearer's injuries; that on the after-
noon before decedent's injuries, appellant's superintendent,
Owens, after notice from Shearer as to the condition of the
belt, personally supervised the repair of the same and by
his action and words assured Shearer that the belt was then

in proper condition and safe to use and decedent so believed; that the only thing the evidence shows Owens to have said in decedent's presence at that time concerning the safety of the belt was: "All right, go ahead"; that neither appellant, nor any of its agents, had ever instructed Shearer to use the signal system or in any other way to stop or slacken the speed of the engine for the purpose of putting on the belt; that the belt was always adjusted without using the clutch or in any other manner stopping or slacking the speed of the machinery; that there is no evidence to show what caused the belt to wrap on the other occasion prior to decedent's injury and Shearer was not present at the time it wrapped but his attention was called to it after it had so wrapped.

The questions presented by this appeal make it important to ascertain the theory of the complaint. This must be determined from a consideration of its leading averments and the general scope and tenor of the pleading. The theory most apparent and clearly outlined by such consideration will be adopted, rather than any possible theory that may be to some extent indicated by a consideration of detached parts and fragmentary statements, or the conclusions of the pleader. *State, ex rel.* v. *Scott* (1908), 171 Ind. 349, 354, 86 N. E. 409; *Vandalia R. Co.* v. *State, ex rel.* (1906), 166 Ind. 219, 229, 76 N. E. 980, 117 Am. St. 370. When a pleading is framed upon a definite theory that may be ascertained by such consideration of its averments, it must be good upon that theory or it will be held insufficient.

Both paragraphs of complaint contain many averments, some of which might be used to support different theories, but tested by the foregoing rule, the leading averments and general tenor of the first paragraph of the complaint, show the theory to be that of a temporary change of employment involving hazards not covered by decedent's contract of hiring, which dangers in the exercise of ordinary care

for his own safety he could not ascertain, and of which the master, in legal contemplation, had knowledge, but of which it failed to warn the decedent.  This theory is apparent from the pleading itself, and was recognized by the trial court, which instructed the jury accordingly.  The gist of the charge is that there were dangers in putting on the belt, due to its worn and defective condition and the effect of "stickum" used upon it that were known to the master and unknown to decedent and could not be known to one of his skill and ability in the exercise of ordinary care for his own safety; that the master failed to warn him thereof and his injury and death resulted from such peculiar and hidden dangers of which he had no knowledge or warning.  It is also charged that decedent attempted to put the belt on the pulley in the same way and by the same means employed in the factory for more than a year prior to the accident, by the regular "oiler" or person employed for that purpose; that decedent was unlearned and unskilled in the duties of the position to which he was temporarily assigned; that he neither knew, realized nor appreciated the dangers incident to putting the belt on the pulley, that he neither knew nor appreciated the effect of said "stickum" upon the belt and its liability to cause the same to fold and wrap about the pulley and to adhere to anything with which it came in contact.  Before a master exposes an inexpe-

3.  rienced servant to dangers that are not apparent to one of his skill and experience, he is required to warn him thereof and to give him such instructions as will enable him, by the exercise of ordinary care, to avoid injury. *Republic Iron, etc., Co.* v. *Ohler* (1903), 161 Ind. 393, 402, 68 N. E. 901.  The servant's implied assumption of

4.  risk covered by his contract of hiring, extends to all the risks ordinarily incident to such employment, but where the master temporarily transfers him from such work and requires of him services involving different duties and hazards not within the scope of his employment, the servant

by entering upon the discharge of such new and different duties does not assume the hazards incident thereto, except such as he may ascertain by the exercise of ordinary care for his own safety. The master is required to give such inexperienced servant both instruction and warning relative to the duties and dangers of his changed employment, and failure to do so renders him liable for an injury resulting from such failure where the servant has not negligently contributed to his own injury. *Newcastle Bridge Co.* v. *Doty* (1907), 168 Ind. 259, 264, 79 N. E. 485.

But it is asserted that the pleading shows that decedent assumed the risk and was himself negligent in attempting to do the work in the manner charged; that the hazard was open and apparent and the decedent's opportunity for knowing the danger was as good as that of the master and could be ascertained by any intelligent person in the exercise of ordinary care. It has been held that it is only where the person injured, knowing and appreciating the danger, voluntarily encounters it, that such knowledge is a defense and that notwithstanding the rule of assumed risk, as a matter of pleading it is only necessary to allege that the servant did not know of the alleged defect or danger in order to exclude both actual and implied knowledge on his part. As a matter of proof to sustain such averment, however, it is necessary to show not only a want of such knowledge, but that it could not have been acquired by the exercise of ordinary care. *Consolidated Stone Co.* v. *Summit* (1899), 152 Ind. 297, 300, 53 N. E. 235; *Standard Oil Co.* v. *Fordeck* (1904), 34 Ind. App. 181, 187, 71 N. E. 163. It has also been held that one does not voluntarily assume a risk, within the meaning of the rule that debars a recovery, when he merely knows there is some danger without appreciating it; that knowledge of facts indicating danger does not necessarily show that the risks were understood and appreciated, and likewise that knowledge of danger itself does not neces-

sarily show negligence on the part of the one who takes the risk. *Avery* v. *Nordyke & Marmon Co.* (1905), 34 Ind. App. 541, 552, 553, 70 N. E. 888; *Wortman* v. *Minich* (1901), 28 Ind. App. 31, 33, 62 N. E. 85; *City of Fort Wayne* v. *Christie* (1901), 156 Ind. 172, 176, 59 N. E. 385; *Wright* v. *Indianapolis, etc., R. Co.* (1903), 160 Ind. 583, 590, 66 N. E. 454; *Perry, etc., Stone Co.* v. *Bennett* (1910), 46 Ind. App. 582, 586, 93 N. E. 238; *Holcomb* v. *Norman* (1911), 47 Ind. App. 87, 91 N. E. 625. The facts pleaded which tend to show the character of the defects and decedent's opportunity for knowing and appreciating

7. the danger of the work to which he was temporarily assigned, are not sufficient to overcome or nullify the averments showing the peculiar and hidden dangers incident to the condition of the belt and the work of putting it on the pulley, decedent's ignorance of such dangers and his want of skill and experience in relation thereto, coupled with appellant's alleged knowledge thereof and failure to warn decedent when he was so transferred from his regular work and assigned to other duties involving dangers not incident to his regular employment. The complaint does not therefore show affirmatively that he assumed the risk or that his negligence contributed to his injury. Whether the

8. risks incident to the new duties to which the decedent was temporarily assigned as alleged were visible and could have been ascertained by him in the exercise of ordinary care, or were of a character requiring knowledge and experience to detect, which he did not possess, and whether he was ignorant of such dangers and appellant knew thereof or could have known by the exercise of the care enjoined upon it by the law, are all questions of fact under the issues in this case to be determined by the jury from the evidence. *City of Fort Wayne* v. *Christie, supra,* 176; *Chicago, etc., R. Co.* v. *Barker* (1907), 40 Ind. App. 256, 262, 81 N. E. 1179; *Perry, etc., Stone Co.* v. *Bennett, supra,* 586. The second paragraph of complaint contains all

the averments of the first, and additional allegations of repairs by the master on the day before the accident and assurance to the decedent that the belt was safe and sufficient until a new one could be provided, which was to be done in a few days. Both paragraphs were sufficient to withstand the demurrer and the court did not err in overruling the same.

Error is also assigned in the overruling of appellant's motion for judgment on the answers to the interrogatories notwithstanding the general verdict. One ground of contention is based upon the finding that the decedent was not directed by appellant or any of its superior officers or agents to put the belt on the pulley. The complaint avers, however, that he was called upon to discharge the duties of Pierce while the latter was temporarily absent, and that putting the belt in question on the pulley was a part of the duties of that position. The special finding simply shows that he was not specially directed to put the belt on, at or before the time of his injury, and that the superior officers of appellant did not know at the time he was undertaking to do so. The answers are not contradictory of the general verdict, for after assigning him to the duties of Pierce's position, as alleged, it was immaterial whether he was specially directed to do any particular act so long as he was acting in the line of the particular employment to which he was so assigned.

It is further contended that the answers which show that decedent had discharged the duties of Pierce for four days immediately prior to the accident and for one day about two years prior thereto, that he had been called upon to put the belt on the pulley and once to unwrap it after it had wound around the pulley, that he knew the belt was old and worn and liable to wrap around the 'pulley, that decedent himself had placed the ''stickum'' on the belt while discharging the duties of Pierce, that it was the dressing that caused the belt so to

wrap and to fold upon itself, show that the decedent, in the exercise of ordinary care, must have known of the dangers of his work; that his position enabled him to know all that the master could know by ordinary care and inspection; that the dangers were open and obvious to a person of ordinary intelligence and were knowingly encountered by the decedent. The answers show that he knew there was some danger, but they do not show that he knew and appreciated the danger of being injured because of the worn and defective belt and its condition caused by the dressing used upon it. The answers also show the work he was doing when injured was not a part of his regular work and was more hazardous than his regular employment. It was possible for him to know the belt was worn and defective, also to place the dressing upon it himself and to put the belt upon the pulley without knowing the peculiar danger incident to the probability of the belt's wrapping and enfolding upon itself and adhering to anything with which it came in contact, to such an extent as to produce the injury as alleged in the complaint. While it is shown in the answers that he unwrapped it once from around the pulley and knew it was likely to wrap, it is also expressly found that Shearer did not know the dangers attending the putting on of the belt and did not at any time know the belt was likely to catch and wrap around his arm, and that it is not shown what caused the belt to wrap around the spindle on former occasions and that Shearer was not present when it did so wrap but only knew of it after it was in that condition.

The findings in regard to the system of signals and the clutch are nullified by the other findings which show that the clutch could not be used when there was a load on the machinery, that decedent did not know the clutch could be so used and it had not in fact been so used when the belt was being placed on the pulley; that it was not the speed of the shaft and pulley that caused

the belt to fold and wrap upon itself, but the belt dressing; that it was the custom and practice in appellant's plant to put the belt on while the machinery was running at its usual rate of speed and it was so running when decedent was injured, that the regular "oiler" for more than a year prior to the accident had not stopped the machinery for the purpose of putting on the belt and such custom was generally known in appellant's factory; that neither appellant nor any of its agents had ever instructed Shearer to use the signal system or to stop or slacken the speed of the machinery while putting on the belt in question and the belt was always adjusted without using the clutch or in any other manner stopping or slackening the speed of the machinery. The findings that show that the speed of the pulley and shaft did not contribute to or cause the injury complained of, and that the injury was caused by the condition of the belt produced by the dressing used upon it, instead of contradicting the general verdict, supported it and are consistent with the theory of the complaint. It is well established that contradictory answers nullify

12. each other and that answers which are consistent with and in support of the general verdict give no basis for judgment upon the answers to the interrogatories.

It is further contended that the answers show that appellant had provided two or more ways of doing the work of putting on the belt and that decedent knowingly and

13. voluntarily chose a dangerous way when a safer way was provided by the master. The answers fail to show that the master had provided a safer way or more than one way of putting on the belt, but tend to show additional precautions for safety that might have been employed. The answers do show that it would have been safer to have stopped the machinery and that Shearer knew the use of the signals, but they fail to show that either the clutch or the signals were provided by the master to be used when putting on the belt in question, but on the contrary it is

found that decedent followed the plan of the superior servants whose duties he was attempting to discharge, and who were better informed as to the condition of the belt than he; that the method employed by decedent had been used continuously in the factory for more than a year prior to the accident. Such continued and habitual use of this plan for such length of time by the persons charged with the responsibility of the work, will be held to have been with both the knowledge and approval of the master.

14. Furthermore, the master who calls upon a servant to discharge hazardous duties not previously required of him, and fails to give any instructions as to the manner of doing such work is not in a position to complain of the way in which the work was attempted to be done where such inexperienced servant follows the plan and uses the same means employed by his superiors, with the knowledge of the master. Shearer's knowledge of the signals and their possible use, on the facts of this case, affords no ground for the application of the rule invoked where two ways are open to the servant and he voluntarily chooses the more dangerous way, but such knowledge was proper to be considered with the other pertinent evidence in determining whether he was guilty of negligence contributing to his injury and death.

There is no irreconcilable conflict between the averment of the complaint that Shearer was injured in about fifteen minutes after his transfer of employment and the

15. finding that he had discharged Pierce's duties for four days. Every presumption is indulged in favor of the general verdict and we are to consider any evidence admissible under the issues that will reconcile the answers with such verdict. It appears that Shearer was called by one of appellant's workmen a few minutes before his injury and that he immediately proceeded to adjust the belt in response to such call. Evidence was admissible to show that Shearer pursued his regular work except when called

upon to discharge duties belonging to Pierce's position and that he was doing his regular work when called to adjust the belt on the occasion of his injury. At all events, it appears without contradiction that he was injured while attempting to do work outside his usual employment and without considering any facts other than those shown by the special findings, the alleged inconsistency is wholly insufficient to overthrow the general verdict. The question whether Shearer knew and appreciated the conditions and dangers incident to putting on the belt as alleged, was one to be determined by the jury, and the answers are not in irreconcilable conflict with the finding upon that question made by the general verdict, but on the contrary many of the answers are strongly corroborative of the general verdict and we therefore conclude that the court did not err in overruling the motion for judgment on the answers to the interrogatories, notwithstanding the general verdict. *Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607, 62 N. E. 492, 92 Am. St. 319.

The appellant has also assigned error in overruling its motion for a new trial. What we have said disposes of many of the questions presented relative to instructions given and refused. On the theory of the complaint, many instructions asked by appellant and refused were not applicable to the issues tendered and tried. Most of the other instructions tendered and refused related to questions covered fully by instructions given. Complaint is specially made of instructions Nos. 26, 27, which are as follows: 26. "The plaintiff is required to prove all the material allegations of his complaint by a fair preponderance of the evidence. By this it is not meant that he is required to prove every allegation of his complaint, as it is alleged, but that before he can recover he must prove enough of said allegations by a fair preponderance of the evidence as are necessary to make out a case

against the defendant.'' 27. ''The plaintiff is not required to prove each allegation in his complaint charging negligence against the defendant, but before he can recover he must prove, by a preponderance of the evidence, some material allegation of negligence as alleged in his complaint, and that such allegation was the proximate cause of the injury and death of his decedent, as therein alleged.'' The instructions are not erroneous in what they state but are incomplete. The appellant did not tender any instruction to advise the jury more fully on the points covered by these instructions and has therefore waived any objection on the ground of their incompleteness.

Instruction No. 26 when fairly interpreted told the jury that to recover, the plaintiff must prove all the material allegations of the complaint by a fair preponderance of the evidence, but need not prove every allegation as alleged. In other words, literal proof is not required but the substance of the issue when so proven will suffice. This proposition is too well established to require the citation of authority to sustain it. Furthermore, immaterial allegations, though in the complaint, need not be proven to warrant a recovery. That the instruction did not more definitely state the material allegations necessary to a recovery, does not show it to be erroneous, in the absence of a request for a more complete instruction upon the subject. The same is true of instruction No. 27.

By instruction No. 10, the jury was told that the plaintiff could not recover though it was proven that he was caught and thrown as alleged, unless it was also proven by a fair preponderance of the evidence that the real cause of the entanglement of decedent's arm in the belt was due solely to the negligence of appellant as alleged and that decedent in no way contributed thereto. By instruction No. 13, the jury was told that if it found from the evidence that each and all of the allegations of the

complaint were true regarding the condition of the belt, yet if. they further found from the evidence that plaintiff's decedent at and before the time of the injury knew, or by the exercise of ordinary care on his part and the use of his senses could have learned, at or before the time of the injury, that the belt was old, worn-out, decayed, soft, pliable, insufficient and dangerous, then the decedent must be held to have assumed the risk arising out of the condition of said belt and there can be no recovery. By instruction No. 20, the jury was told that if the decedent knew or, by the exercise of care as aforesaid, could have known that the dressing used upon the belt was a sticky substance and liable to make the belt stick and adhere to the pulley and line shaft, and to other objects, he must be held to have assumed the risk of the use of the belt dressing and there can be no recovery. The jury, by its answers to the interrogatories, expressly found that the injury was caused by the condition of the belt and the dressing used upon it, also that decedent did not know and could not ascertain the dangers but the same were known to appellant's more skilled employes, and decedent was not warned thereof. This shows clearly the negligence upon which the jury based its verdict, and that failure to specify more fully the material allegations of the complaint could not have harmed appellant, since the instructions relative to the condition of the belt and the dressing used upon it were full, specific and as favorable to appellant as the law warrants. By instruction No. 40, the jury was informed as to the theory of the complaint, as already indicated, and by numerous other instructions every phase of the case, within the issues, relating either to liability or defense, was fully and fairly covered. The instructions, taken as a whole, state the law correctly and we are convinced that appellant was not harmed by the instructions given or by the failure to give those refused.

The other questions presented are in effect answered by what we have already said. The motion for a new trial was properly overruled. Judgment affirmed.

Ibach, J., not participating.

NOTE.—Reported in 99 N. E. 829. As to assumption of risk and contributory negligence in law of master and servant, see 97 Am. St. 884; 98 Am. St. 289. As to the general question of the master's duty to warn or instruct servant, see 44 L. R. A. 33. As to the master's duty to protect or warn against dangers not reasonably to be apprehended, see 21 L. R. A. (N. S.) 89; 39 L. Ed. U. S. 465. As to the servant's assumption of risk of danger imperfectly appreciated, see 4 L. R. A. (N. S.) 990. As to the servant's assumption of obvious risks of hazardous employment, see 1 L. R. A. (N. S.) 272. See, also, under (1) 31 Cyc. 84; (2) 31 Cyc. 116; (3) 26 Cyc. 1173; (4) 26 Cyc. 1172; (5) 26 Cyc. 1393, 1415; (6) 26 Cyc. 1201; (8) 26 Cyc. 1478; (9) 26 Cyc. 1513; (12) 38 Cyc. 1926; (13) 26 Cyc. 1450; (14) 26 Cyc. 1243, 1250; (15) 38 Cyc. 1930; (16) 38 Cyc. 1748, 1750; (17) 38 Cyc. 1693; (18) 31 Cyc. 675, 680; (19) 38 Cyc. 1815; (20) 38 Cyc. 1809, 1816.