AMERICAN STEEL FOUNDRIES COMPANY v. CARBONE.

[No. 8,514. Filed June 18, 1915. Rehearing denied October 8, 1915. Transfer denied January 13, 1916.]

1. APPEAL.—*Questions Reviewable.*—*Sufficiency of Complaint.*— Under §§344, 348 Burns 1914, Acts 1911 p. 415, relating to procedure in civil cases, no question can be presented on appeal with reference to the sufficiency of a complaint, where the demurrer thereto is not accompanied by a memorandum of defects. p. 487.

2. ACTION.—*Commencement.*—"*Pending Litigation*".—Where a complaint was filed in April, 1910, and on the tenth day thereafter defendant entered appearance, and in December following withdrew such appearance, no other steps having been taken, and then in October, 1911, *alias* summons was issued on motion of plaintiff, there was, until such summons was issued, no "litigation pending" within the meaning of §4 of the act of 1911 (Acts 1911 p. 415), relating to procedure in civil cases and providing that nothing therein should apply to litigation pending at the time the act went into effect, since under §317 Burns 1914, §314 R. S. 1881, an action is commenced by the filing of a complaint, the issuance of the summons and the placing of same in the hands of the sheriff, and any effect which defendant's appearance may otherwise have had was necessarily obviated by the withdrawal of such appearance. p. 487.

3. MASTER AND SERVANT.—*Injuries to Servant.*—*Change of Employment.*—*Verdict.*—*Answers to Interrogatories.*—Where plaintiff, originally employed to operate a power-driven chipping machine in a steel mill, sought recovery for injury to his eye received while temporarily assisting at the work of "flogging" castings, on the theory that the latter work involved greater hazards and that he was inexperienced therewith, answers by the jury to interrogatories showing that in a general way "flogging" was quite similar to

"chipping", except that "flogging" a casting was performed by two men instead of one and that the pieces cut or knocked off the casting were heavier and more liable to fly off, that though plaintiff was familiar with the duties of a "flogger" he had no practical knowledge of the work, and that he was temporarily performing work as a "flogger" at the time of his injury pursuant to an order to do so, accompanied by a threat of discharge for refusal to obey, did not show conclusively that plaintiff knew and appreciated the dangers of the work of "flogging", and were not in irreconcilable conflict with the general verdict. pp. 489, 491.

4.  APPEAL.—*Review.*—*Answers to Interrogatories.*—In passing upon the sufficiency of the jury's answers to interrogatories to overcome the general verdict, the court will indulge all presumptions in favor of the general verdict and bring to its aid any evidence that could have been properly admitted under the issues. p. 491.

5.  MASTER AND SERVANT.—*Injuries to Servant.*—*Change of Employment.*—*Assumption of Risk.*—A servant, though assuming the risks ordinarily incident to the work for which he was employed, on being temporarily transferred to work involving different or greater dangers than those incident to the work covered by his employment, does not necessarily assume the risks incident to such other work. p. 492.

6.  MASTER AND SERVANT.—*Injuries to Servant.*—*Change of Employment.*—*Assumption of Risk.*—*Contributory Negligence.*—Where a servant is ordered to do work not contemplated by his employment, and which involves hazards equally apparent to the master and the servant, he is not necessarily barred from recovering for injuries resulting from such hazards while obeying such order, either on the theory of assumed risk or of contributory negligence. .p. 492.

7.  MASTER AND SERVANT.—*Injuries to Servant.*—*Change of Employment.*—*Assumption of Risk.*—*Contributory Negligence.*—*Jury Questions.*—Where a servant is directed to perform work not contemplated by his employment and not usually performed by him, it is a question of fact for the jury to determine from the evidence whether, in obeying such direction he assumed the risks incident, or whether he was guilty of contributory negligence. p. 495.

8.  APPEAL.—*Review.*—*Evidence.*—*Verdict.*—Where there was some evidence to support the verdict and to warrant the inference of every ultimate fact essential to support the verdict, the verdict can not be disturbed on the ground that the evidence is insufficient, or that the verdict is contrary to law. p. 495.

From Lake Superior Court; *Lawrence Becker,* Judge.

Action by Tony Carbone against the American Steel Foundries Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Ralph F. Potter* and *Bomberger, Sawyer & Curtis*, for appellant.

*Hembroff & Glazebrook, McAleer Bros.* and *John H. Gillett*, for appellee.

FELT, J.—Appellee recovered a judgment against appellant in the sum of $1,416.66 for personal injuries which resulted in the loss of an eye. The complaint is in one paragraph, and the averments material here, in substance, charge that in February, 1909, appellant employed appellee to operate a power-driven hammer or chisel and he continued to operate such hammer until June 9, 1909, on which day appellant carelessly and negligently ordered and directed appellee to leave his work at the hammer and go to a different part of its mill and assist another employe to chip pieces of iron and steel from mouldings and castings and, carelessly and negligently ordered appellee to hold an iron chisel while such other employe struck it with a maul or hammer; that appellee was unacquainted with such work which was different from that which he was employed to perform; that the work was more hazardous and dangerous than that which he was employed to do; that appellant carelessly and negligently failed and neglected to inform appellee of the dangerous and hazardous nature of the work that he was then ordered to perform; that by the order he was required to work with different employes and in a more hazardous place than he was accustomed to work and was required to use other and different instruments and tools from those he was employed to use; that in compliance with said careless and negligent directions of appellant, appellee went to said part of appellant's mill and while holding said chisel and performing such work, and without any negligence on his part, was struck in the

right eye by a piece of steel, by reason of which the sight of the eye was destroyed, that by reason of the aforesaid negligence of appellant and by reason of said injuries he was damaged in the sum of $20,000. The complaint was answered by general denial and by the two-year statute of limitations.

With the general verdict the jury returned answers to interrogatories. A motion for judgment on such answers, and likewise, appellant's motion for new trial, was overruled. These rulings are present-ed by the assignment of errors, and it is also assigned that the court erred in overruling the demurrer to the complaint for insufficiency of facts to state a cause of action.

Appellee contends that no questions are presented relating to the sufficiency of the complaint because there was no litigation pending within the meaning of the act of 1911 (Acts 1911 p. 415, §§344, 348 Burns 1914), amending §§344, 348 Burns 1908, §§339, 343 R. S. 1881, when said act went into effect, and because no memorandum was filed with the demurrer to the complaint as required by that act. Section 4 of said act (Acts 1911 p. 415) provides that: "Nothing in this act shall affect any litigation pending at the time this act takes effect." The record shows that the complaint was filed on April 7, 1910, and that on April 18, 1910, appellant by its attorneys entered an appearance to the suit. On December 27, 1910, an entry in said cause was made as follows: "Comes now the defendant by Bomberger, Sawyer & Curtis, its attorneys, and now withdraws its appearance heretofore entered herein." The next entry in the cause bears date of October 17, 1911, when, on motion of appellee, the court ordered an *alias* summons issued for appellant. On October 30, 1911, appel-

lant's attorneys entered a special appearance in the case and moved to quash the *alias* summons on the ground that the suit "was commenced by the issuance of said summons more than two years after plaintiff's cause of action accrued, which was on June 9, 1909." By §317 Burns 1914, §314 R. S. 1881, and the decisions construing it, a suit is commenced by the filing of a complaint and the issuance of a summons by the proper officer and causing the same to be placed in the hands of the sheriff. The record in this case does not show that a summons was issued prior to the appearance of appellant to the action in April, 1910, unless we infer the fact from the other facts shown by the record as above indicated. Be this as it may, the record fails to show that a summons was duly served on appellant prior to its appearance to the action, which appearance was withdrawn without objection from any one. It has been held in this State that it is within the judicial discretion of the trial court to permit a party who has appeared to an action to withdraw his appearance, and that, where a defendant who has not been served with process is permitted to withdraw his appearance, it is reversible error to render judgment against him upon default without procuring the issuance and due service of process upon him. It has also been held that when a defendant is permitted to withdraw his appearance, such action necessarily withdraws any pleadings he has filed in the case, and that to authorize a valid judgment against a defendant who has been permitted to withdraw his appearance the record must affirmatively show the issuance and due service of process upon him. *McArthur* v. *Leffler* (1887), 110 Ind. 526, 531, 532, 10 N. E. 81; *Young* v. *Dickey* (1878), 63 Ind. 31, 33; *Baker* v. *Ludlum* (1889), 118 Ind. 87, 89, 20 N. E. 648; *Baker* v. *Wambaugh*

(1885), 99 Ind. 312, 314. On the record in this case, it can not be held that after appellant withdrew its appearance in December, 1910, the court had jurisdiction of it until the issuance and service of process upon it in October, 1911. Since the court did not have jurisdiction of the defendant until the latter date, the suit was not "litigation pending" when the act of 1911, *supra*, went into effect on April 21, 1911. The demurrer presented after issuance of the summons in October, 1911, should have been accompanied by a memorandum as required by the act of 1911 (Acts 1911 p. 415, §344 Burns 1914) and since it was not, no question is presented as to the sufficiency of the complaint.

No questions are presented relating to the plea of the statute of limitations.

The answers to interrogatories show in substance that at the time of his injury appellee worked in appellant's shop where castings were cleaned and chipped, and that he had worked for appellant about four months; that he was employed to chip and clean castings; that at the time of his injury he was perfectly familiar with the duties of a chipper and familiar with the danger of chipping castings; that the danger of chipping castings did not lay chiefly in the liability of being struck from particles chipped off by other workmen, but partly from the workman's own work; that there were no other dangers connected with chipping; that appellee during the four months of his employment chipped castings with a chisel propelled by steam or compressed air; that he also during said time used a hand hammer and chisel occasionally when the air chisel did not answer his purpose; that flogging consisted of one man holding a chisel at the end of a wooden handle while another struck the chisel with a sledge, thus chipping or breaking off

the part to be removed from the casting; that besides the size of the pieces chipped off and the number of men doing the work, there was a substantial difference in the character of the work of chipping by hand and flogging; that the work was done by two men and pieces cut off were heavier and more liable to fly off; that appellee at the time of the accident was familiar with the duties of a flogger; that appellee was injured while holding a chisel and flogging a casting; that he did not voluntarily take such chisel from the man theretofore using it; that he was ordered to do so by the foreman; that such foreman said to appellee: "Here, go and help this fellow for five minutes," and appellee said: "No, I don't want to go; that isn't my job," and the foreman said: "If you don't want to go you can take your coat and get right out of here; I will discharge you." That appellee had more than two years' experience as a chipper and had worked for more than two years in cleaning castings with hand and air hammers in steel foundries; that the danger of flogging consisted in being hit by particles flying from the operator's own work.

Appellant contends that the answers to the interrogatories show that appellee was familiar with the work of flogging and that there was no substantial difference in the character and manner of the work, or in the dangers incident thereto, from those of the work appellee alleges he was employed to do and that the injury resulted from one of the ordinary hazards of such employment, assumed by appellee.

The answers do show that appellee was familiar with the duties of a flogger, but they do not show that he had any practical experience in such work. The answers also show that the work of flogging was in a general way quite similar to the work of

cleaning and chipping, but they also show that flogging was done by two men instead of one and the pieces cut or knocked off the castings were heavier and more liable to fly off; that appellee was ordered from the work he was hired to do and was injured while performing work outside his usual employment; that he objected to the change of work and was threatened with discharge if he did not comply with the order to make the change.

All presumptions are in favor of the general verdict and, in considering the answers to the interrogatories, we may bring to the aid of the general verdict any evidence that might properly be received under the issues of the case.

4.

Evidence was admissible to show that notwithstanding the general similarity of the work appellee was doing when injured to that he was employed to do, he did not have the same chance to avoid injury when holding the chisel for another man to strike with a sledge as he did in chipping where he used smaller tools, worked alone, and he himself controlled all the tools used in doing the work. Also, that, while he had general knowledge of the work of flogging, he had no practical experience and did not know and appreciate the dangers incident to such work. Viewed from this standpoint, it can not be held that the work appellee was doing when injured was so similar in the manner of doing it and the dangers incident thereto, as to show conclusively that he knew and appreciated the dangers of the work he was doing when injured or could have known thereof by the exercise of ordinary care for his own safety. The answers are not in irreconcilable conflict with the general verdict. *National Fire, etc., Co.* v. *Smith* (1913), 55 Ind. App. 124, 139, 99 N. E. 829; *Osborn* v. *Adams Brick*

3.

*Co.* (1913), 52 Ind. App. 175, 188, 99 N. E. 530, 100 N. E. 472.

Appellant insists that the verdict is not sustained by sufficient evidence and is contrary to law. Appellant contends that because of the similarity of the two kinds of work and appellee's opportunity of knowing the manner of doing flogging and the dangers incident thereto, he knew, or by the exercise of ordinary care for his own safety could have known the dangers incident to the work of flogging and therefore that the dangers incident thereto were assumed by him under his general contract of employment; that the dangers of both employments were due to flying particles from castings, and knowledge of one was necessarily knowledge of the other; that there was no duty resting on appellant to warn appellee of the dangers incident to flogging because the undisputed evidence shows they were already known to him. The risks assumed by an employe are those ordinarily incident to the particular work he is employed to do and where he is temporarily transferred from his usual work to other employment involving different, or greater, dangers than those incident to the work covered by his employment, he does not by obeying such orders necessarily assume the risks incident to such other work. *National Fire, etc., Co.* v. *Smith, supra; Osborn* v. *Adams Brick Co., supra; Cincinnati, etc., R. Co.* v. *Madden* (1893), 134 Ind. 462, 471, 34 N. E. 227.

It is the law in this State that a servant ordered to perform work not contemplated by his employment, involving hazards equally apparent to both master and servant, does not by obeying such orders necessarily bar his right to a recovery for injuries resulting from such hazards and received while obeying such order. Where he is

directed by the master, or some one representing the master, to perform work outside his usual employment involving other or greater hazards than those incident to the work he was employed to do, he does not by continuing in the employment, and by undertaking to do such work, necessarily assume such different or greater hazards, nor, can it be declared as a matter of law that he is necessarily guilty of contributory negligence in so doing.   In *Brazil Block Coal Co.* v. *Hoodlet* (1891), 129 Ind. 327, 336, 27 N. E. 741, the Supreme Court said: "When a master orders a servant to do something which involves encountering a risk not contemplated in his employment, although the risk is equally open to the observation of both, it does not necessarily follow that the servant either assumes the increased risk, or is negligent in obeying the order. If the apparent danger is such that a man of ordinary prudence would not take the risk, the servant acts at his peril.   But unless the apparent danger is such as to deter a man of ordinary prudence from encountering it, the servant will not be compelled to abandon the service, or assume all additional risk, but may obey the order, using care in proportion to the risk apparently assumed, and if he is injured the master must respond in damages."   In *Pittsburgh, etc., R. Co.* v. *Adams* (1886), 105 Ind. 151, 164, 5 N. E. 187, the Supreme Court said: "The servant's implied assumption of risks is confined to the particular work and class of work for which he is employed.   There is no implied undertaking, except as it accompanies and is a part of the contract of hiring between the parties.   When the servant voluntarily, and without directions from the master, and without his acquiescence, goes into hazardous work outside of his contract of hiring, he puts himself beyond the protection of the master's implied

undertaking, and if he is injured he must suffer the consequences. On the other hand, if the servant, by the orders of the master, is carried beyond the contract of hiring, he is carried away from his implied undertaking as to risks. If the master orders him to work temporarily in another department of the general business, where the work is of such a different nature and character that it can not be said to be within the scope of the employment, and where he is associated with a different class of employes, he will not, by obeying such orders, necessarily thereby assume the risks incident to the work and the risk of negligence on the part of such employes. He will not necessarily be guilty of negligence in obeying such orders of the master, even though they may carry him into more hazardous and dangerous work. Whether or not the servant may be negligent in obeying such orders will depend upon the facts and circumstances of each particular case. The facts and circumstances may be such as to show that in obeying such orders the servant voluntarily assumed the increased risks; or they may be such as to show that he obeyed the orders for a temporary change, under threats of discharge, or under such circumstances as that he might well have expected a discharge if he disobeyed." To the same effect are the following: *Cincinnati, etc., R. Co. v. Madden, supra; Flickner v. Lambert* (1905), 36 Ind. App. 524, 533, 74 N. E. 263; *Nall v. Louisville, etc., R. Co.* (1891), 129 Ind. 260, 271, 28 N. E. 183, 611; *Louisville, etc., R. Co. v. Hanning* (1892), 131 Ind. 528, 31 N. E. 187, 31 Am. St. 443; *Annadall v. Union Cement, etc., Co.* (1905), 165 Ind. 110, 74 N. E. 843; *Oölitic Stone Co. v. Ridge* (1910), 174 Ind. 558, 570, 580, 91 N. E. 944; *Newcastle Bridge Co. v. Doty* (1907), 168 Ind. 259, 264, 79 N. E. 485; *American Car, etc., Co. v. Clark* (1904), 32 Ind. App.

644, 647, 78 N. E. 28; *Marietta Glass Mfg. Co.* v. *Bennett* (1916), *ante* 435, 106 N. E. 419; 4 Labatt, Master and Servant (2d ed.) §1387.

The effect of the numerous decisions cited, is that, where an employe by order of the master is directed to do work not contemplated by his employment and not usually performed by him, the usual rule of assumption of risk does not apply when the servant is injured while performing such work. In such cases it becomes a question of fact for the jury to determine from the evidence whether, in obeying such orders and performing the work required of him he assumed the risks incident thereto, or whether, in performing such work he was guilty of any negligence proximately contributing to the injury for which he seeks a recovery.

In addition to the facts shown by the answers of the jury to the interrogatories, the general verdict is a finding in appellee's favor upon the propositions that the work of doing flogging was not so similar to the work of chipping and cleaning, which appellee was hired to do, as to show that the dangers incident to the work of a flogger were covered by appellee's contract of hiring and therefore assumed by him; that the dangers incident to flogging were not known and appreciated by appellee; that the apparent dangers of flogging were not such that a man of ordinary prudence would have refused to obey the order and assist in the work of flogging, under the circumstances shown by the evidence in this case.

There was some evidence tending to support the verdict and to warrant the inference from the evidence of every ultimate fact essential to support the verdict. Such being the case we can not disturb the verdict on the ground that it is not sustained by sufficient evidence, or that it is contrary to law. *National Fire, etc., Co.* v. *Smith,*

*supra; Abelman* v. *Haehnel* (1914), 57 Ind. App. 15, 103 N. E. 869. *Annadall* v. *Union Cement, etc., Co., supra; Newcastle Bridge Co.* v. *Doty, supra,* 264, and cases cited; *Lowe Mfg. Co.* v. *Payne* (1910), 167 Ala. 245, 52 South. 447, 30 L. R. A. (N. S.) 436, note. No reversible error is shown. Judgment affirmed. Ibach, J., dissents.

## DISSENTING OPINION

IBACH, P. J.—I am unable to reach the same conclusion in this case as that expressed in the majority opinion. It is conceded that appellee's case proceeds upon the theory of a temporary change of his employment, the latter employment being more hazardous than the former. I have always understood that in order to recover on such a theory the injured party must make it appear that his injury was received on account of a risk or danger incident to the new employment which was not present in the old. That there was in fact a new danger connected with the new work is the foundation upon which the right of recovery rests. It is averred in substance that appellee was employed by appellant to handle, manage and operate a machine called a steam hammer and chisel and he did operate said hammer from February 15, 1909, to June 9, 1909, and on said latter day he was negligently and carelessly ordered by appellant to leave his work at the hammer and assist another employe of the company to remove pieces of iron and steel from mouldings and castings. That the work was different and more hazardous than that which he was originally hired to do and appellant negligently failed to inform him of the dangerous and hazardous nature of the work he was doing when injured. The undisputed evidence and the answers to the interrogatories show that the former work is styled "chipping" and the latter "flogging" by those engaged in such

employment. It also is shown that all this work was done in the same room, and was there done during all the months appellee worked for appellant and those engaged at the one service were near to those engaged at the other. The room was called the "chipping" room. Appellee's original work required him to chip and clean sand and metal from castings by the use of air hammers, hand hammers and chisels, and was usually done by one man, while the work of "flogging", the latter work, was done in the same general manner, except that it was done by two men, one to hold the chisel, the other to strike with the hammer, and it is apparent that this was necessary simply because in "flogging" larger particles were removed. While "chipping" and while "flogging," particles of metal, some small and others larger, flew in all directions about the room and there was no means of controlling the direction that any such particles would take when cut from the casting, but if there had been, certainly that means could have been ascertained by appellee while engaged in the use of the smaller chisels and smaller hammer. All the work done in this room was simple in its nature and easily understood by persons of ordinary intelligence, and appellee was such a person. Appellee testified that he was familiar with the duties of a "flogger" and this is quite evident, as he was constantly in a place where he was able to see the work performed and he himself was provided with a flogging hammer and chisel at the time he worked as a "chipper."

It is apparent to me that the work covered by his original employment was different from the latter only in degree and not in kind, and there was no change in the general nature and character of the work, only in the doing of the latter heavier tools

were used to accomplish the same end. Appellee was not injured by reason of any imperfect tools or because of the lack of skill on the part of his associ- ate engaged in the particular work, but wholly on account of the particle of steel which they were re- moving, entering his eye. This identical condition and situation relative to flying particles of steel was constantly present before him when engaged in "chipping," his original employment, and the identi- cal danger about which he claims he should have been instructed, is the same danger that was ever present about him when engaged in the work of a "chipper." So it is evident from the whole record that the danger incident to the doing of the work complained of, that is, that particles of steel would fly in many and all directions when removed from castings, whether by small chisels or large, struck by a small hammer or large, was as obvious in the latter employment as in the former, so that the master was under no obligation to warn appellee. There is no duty to warn an employe about matters which he knows. To my mind, there is no evidence to sup- port the judgment. It does not seem necessary to cite authorities. We call attention, however, to a few which seem to fully support the position here taken. 1 Labatt, Master and Servant §456; 4 Labatt, Master and Servant (2d. ed.) §1379; *In- diana Stove Works* v. *Howden* (1909), 44 Ind. App. 656, 90 N. E. 16; *Dill* v. *Marmon* (1905), 164 Ind. 507, 73 N. E. 67, 69 L. R. A. 163; *Newcastle Bridge Co.* v. *Doty* (1907), 168 Ind. 259, 264, 79 N. E. 485; *W. B. Conkey Co.* v. *Larsen* (1910), 173 Ind. 585, 589, 91 N. E. 163, 29 L. R. A. (N. S.) 116.

NOTE.—Reported in 109 N. E. 220, 1095. As to assumption of risk as distinguished from contributory negligence, see 98 Am. St. 314. See, also, under (1) 3 Cyc 158; (2) 1 C. J. 1156; 1 Cyc 749; (3) 26 Cyc 1513; 38 Cyc 1927; (4) 38 Cyc 1928; (5) 26 Cyc 1205; (6) 26 Cyc 1221, 1272; (7) 26 Cyc 1478, 1482; (8) 3 Cyc 348.